**Charles W. CREIGHTON et ux., Appellants,**

**v.**

**STATE of Texas, Appellee.**

**No. 3774.**

Court of Civil Appeals of Texas.

Eastland.

March 29, 1963.

Rehearing Denied April 26, 1963.

George T. Thomas, Big Spring, for appellants.

David Thomas, Asst. Atty. Gen., Waggoner Carr, Atty. Gen., Austin, for appellee.

GRISSOM, Chief Justice.

The State condemned for highway purposes 87.6 acres of land out of the Creightons' 1912 acre ranch, thereby cutting the remaining ranch into two parts. The east end of the ranch and the principal improvements are within the city of Big Spring and the west end is about 2½ miles outside the

city limits. The Creightons have been operating a registered cattle ranch for many years on said tract with their home and nearly all improvements on the east end. The condemnation leaves 453 acres on the east side of the highway and the remainder on the west. The ranch is permanently watered by wells at the houses on the east end with only surface tanks on the west and during drouths the cattle have to come to the east end for water. A jury found that the condemnation caused no decrease in the value of the remainder of the ranch. The land owners have appealed.

■ Appellants' 1st and 2nd points are in substance that the State having condemned the fee simple title to the land, except that oil, gas and sulphur thereunder may be taken without access to the surface, and the condemnation having severed one portion of the remainder from the other the court erred in allowing the State to introduce evidence that, although appellants have no easement for passage of cattle under the overpasses to be built on the highway, a permit will be granted by the highway commission, and, hence, damage to the remainder will be alleviated and further erred in admitting evidence that appellants' ranch operations will not be severed until construction begins and during construction only to a limited extent because during construction appellants' cattle will be permitted by the highway building contractor to cross over and through the right-of-way.

Expert witnesses for the State in effect agreed that the Creightons will suffer damage to the remainder by having it cut into two pieces. But, they contended that such damages would be offset by an increase in value caused by the highway being built on the condemned land. A witness was allowed to testify to the probable permissive use by the Creightons of space beneath bridges for passage of their cattle. Such evidence was designed to show a diminution, or non-existence, of damage to the remainder by stating that the ranch operations would not actually be severed and that the Creightons would be permitted to use the right-of-way. State witnesses testified that the Creightons could obtain a permit to fence a passageway under the bridges so that their cattle could pass from one side of the remainder to the opposite side of the new highway. They said a permit would be granted but that it could be refused and that, if granted, it could be revoked at will by the commission. Such testimony was objected to, among other reasons, because it was not relative to a right granted the Creightons but to a privilege which could be refused or granted, and if granted, revoked at will. A witness was permitted to testify that he wrote a letter to a highway official inquiring whether access would be provided for passage of appellants' cattle under the highway and that he replied that it would. Appellants say it is apparent that the State was permitted to show that while the Creightons will not have a legal right to use the land greater than that of the general public, nevertheless, the value of the remainder will not be reduced because the commission will grant them a permit for their cattle to pass freely under the bridges and, further, that severance of portions of the remaining ranch will not occur until construction begins at some time in the future and that during construction the cattle can pass from one severed portion of the remainder to the other because the highway construction contractor will be required to permit passage by virtue of a general provision, usually put in such contracts, to the effect that the contractor shall not disturb the public more than necessary. Appellants say such testimony constituted evidence of a hearsay promise by a resident engineer that appellants will be granted a permit for passage of their cattle through the condemned land; that such testimony was not only hearsay but was relative to a privilege, rather than a right, and improperly caused the jury to conclude that the remainder was not reduced in value by being cut into two pieces.

In Perkins v. State, Tex.Civ.App., 150 S.W.2d 157, (Writ Dis.), the State was

widening a road. It sought a part of the needed land from Perkins. On the part of Perkins' land condemned there were trees and shrubs which Perkins considered of value to his remaining property. Part of the damage to his remaining land was claimed because trees and shrubs on the condemned land would be removed. A highway engineer was permitted to testify that the general and present policy of the commission was not to remove shrubs and trees unless hazardous to traffic; that, while it had the right to remove them without permission from the adjacent land owner, the commission's policy was not to remove them. The court said that such testimony was elicited for consideration of the jury in measuring the compensation to be awarded and was designed to minimize the award of damages to the remainder as if the improvements were being left for appellants' use and enjoyment. Introduction of such testimony was held to constitute reversible error. The court then quoted with approval from 20 C.J. 768, Sec. 227, the statement that "The probability that the appropriator will not exercise, or the fact that there is no present intention of exercising, to the full extent the rights acquired, should not be considered in reduction of the damages, where there is nothing to prevent a full exercise of such rights, since the presumption is that the appropriator will exercise his rights and use and enjoy the property taken to the full extent." In 29 C.J.S. Eminent Domain at pages 1015 and 1016, § 155, the rule is stated in the same language with the additional statement that "the possibility that the condemnor may in the future construct crossings which will lessen the damages caused by dividing defendant's property cannot be considered where there is no binding agreement or duty on the part of the condemnor to construct such crossings." See also Strickland v. City of Friona, Tex.Civ.App., 294 S.W.2d 254, (Ref. N.R.E.); Hill v. State, Tex.Civ.App., 289 S.W.2d 801; Coos Bay Logging Co. v. Barclay, 159 Or. 272, 79 P.2d 672; Old Colony R. Co. v. Miller, 125 Mass. 1, 28 Am.Rep. 194; St.

Louis, K. & N. W. R. Co. v. St. Louis Union Stock Yards Co., 120 Mo. 541, 25 S.W. 399; Grand River Dam Authority v. Thompson, 187 Okl. 129, 101 P.2d 843, 846 and Texas Power & Light Company v. Cole, 158 Tex. 495, 313 S.W.2d 524. Such evidence should not have been admitted. Such testimony was directly pertinent to the issues decisive of the question whether the value of the remainder was reduced by building a highway through the ranch and cutting it into two pieces. It was prejudicial and, we think, probably caused the rendition of an improper judgment.

Appellee contends that appellants were not injured because it alleged that, although the State was taking the fee simple title, the State had "designated said highway as a Controlled Access Highway and roads are to be built as a part of said highway whereby the right of ingress and egress to or from the remaining property of defendants abutting on said highway is not to be denied." It says that the Perkins' decision is not applicable because of such pleadings and the provisions of Section 2 of Article 6674w–1, Vernon's Ann.Civ.St. that

"Along new Controlled Access State Highway locations, abutting property owners shall not be entitled to access to such new Controlled Access State Highway locations as a matter of right, and any denial of such access shall not be deemed as grounds for special or exemplary damages, except where access to such new Controlled Access State Highway shall have been specifically authorized by the State Highway Commission to or from particular lands abutting upon such new Controlled Access State Highway in connection with the purchase or condemnation of lands or property rights from such abutting owners to be used in such new Controlled Access State Highway location, and the State Highway Commission thereafter denies access to or from such particular abutting lands to such State Highway at the point where such lands

actually abut upon such State Highway."

Appellee says that although appellants have not been granted a private easement over the land condemned they do have all the rights to use it that are enjoyed by the "general public" and that appellants, and everyone else, will be limited to the points where they can enter on or exit from the expressway lanes. The State then says that from all of such testimony relevant to a permit to fence a passage under the bridges, and the like, it cannot be said that the jury was misled as to the nature and character of the permit and that, clearly, such is a revocable privilege that in no way enlarges appellants' right of ingress and egress from the property that abuts the highway. We cannot agree with appellee's interpretation of the Perkins' case wherein contention is made that the vice found in the testimony in the Perkins' case was grounded on the proposition that when and if the trees and shrubs were removed Perkins could not collect damages, while here, by virtue of said pleadings and statute, appellants are not in the same predicament as Perkins was because under the pleadings and the judgment appellants have the right to sue for damages if they are deprived of access to the highway.

■ We do not understand appellants to contend that they will be denied access to the highway. That is the thing guaranteed them by virtue of said statute and pleadings. Their complaint is that by the testimony mentioned, some of which was hearsay, the State was permitted to tell the jury that before, during and after construction of the highway, which it estimates will take three years, appellants will suffer no damages to the remainder because they will be permitted to fence under the bridges and, generally, so far as physically possible, they will be permitted to use the land condemned as it was used prior to the condemnation. Such testimony was not relative to a right granted appellants but to a privilege which might be granted, refused, or, if granted, revoked at the pleasure of appellee. There is nothing to prevent the State from fully exercising its rights over the condemned land except to give appellants access to the highway as the statute provides and, although permitting access to the new highway, depriving appellants of all privileges that their witnesses said or indicated would be granted them, which, if granted, indicated that the value of the remainder would not be decreased by taking the condemned strip out of appellants' ranch. The presumption is that the State will exercise its rights and use and enjoy the property taken to the full legal extent. Such testimony was reasonably calculated to and probably did cause the jury to conclude, as it did, that the value of the remainder was not decreased by the taking of the condemned land although it had the effect of splitting the remainder of the ranch into two tracts separated by a highway. We agree with appellants' contention and conclude that probable injury is shown.

■ Appellants' points 3 and 4 assert error in the admission of evidence of the State's witnesses of sales of land by Snyder to Acuff and by Pike to Koger because said tracts were not sufficiently comparable. As to some of the land, at least, a witness testified that the only comparable things about said tract and appellants' land was that both were land and "fairly close in." In fact, the witness indicated that as to some of the sales that he did not consider the land involved in the other sales as comparable to appellants' land, but that they were the only ones he could find in that general vicinity. Evidence of the price at which such other tracts were sold was incompetent because they were not shown to be comparable to appellants' land. State v. Willey, (Tex.Sup. Ct.), 360 S.W.2d 524; 22 Tex.Jur.2d 422, 425; Texas Law of Evidence, McCormick and Ray, p. 908, Sec. 699. According to some of the State's own testimony, in material respects they were dissimilar. A State's witness testified that because of the dissimilarity he made adjustments in arriving at the value of appellants' property.

We think the controlling issues were submitted in accord with the rules and decisions of our Supreme Court. Texas R.C.P. 279; State v. Oakley, (Tex.Sup.Ct.), 356 S.W.2d 909, 915; State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194. We think appellants' remaining points are without merit. They are overruled.

The judgment is reversed and the cause is remanded.