Vada WHITE, individually et al.,
Petitioners,

v.

NATURAL GAS PIPELINE COMPANY OF
AMERICA, Respondent.

No. B–1347.

Supreme Court of Texas.

July 9, 1969.

Rehearing Denied July 30, 1969.

**300**

Witherspoon, Aikin, Thomas & Langley, John D. Aikin and Thomas W. Kendrick, Hereford, for petitioners.

Culton, Morgan, Britain & White, L. A. White, Amarillo, for respondent.

McGEE, Justice.

In this condemnation proceeding the trial court rendered judgment on the verdict for the landowner for the sum of $42,960.50. The condemnor appealed and the Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for a new trial. 436 S.W.2d 944. We affirm the judgment of the Court of Civil Appeals.

The Court of Civil Appeals held that the trial court committed prejudicial error in striking Paragraphs 8(a), 8(b), 9, and 10 of condemnor's first amended statement in condemnation.

The substance of the provisions in 8(a), 8 (b), 9(a), and 9(b) was to the effect that the landowner could continue to farm upon and irrigate across the strip taken and the remaining land during and after the construction period, and that condemnor would from time to time remain liable for damages to crops resulting from the construction, operation or maintenance of the pipeline. Paragraph 9(c) provided that, after the initial construction period, landowner could erect and maintain upon the strip, any structure save and except a building which would render it unfeasible for condemnor to operate and maintain its pipeline. Paragraph 10 merely stated that its right of way was limited by these provisions.

The parties could enter into a contract containing the above provisions and they would be binding and valid stipulations. In this case, however, they are merely offers made by the condemnor and not accepted by the landowner.

Mere promissory statements or declarations of future intentions by a condemnor are invalid. Creighton v. State, 366 S.W.2d 840 (Tex.Civ.App.1963, writ ref'd n.r.e.); Perkins v. State, 150 S.W.2d 157 (Tex.Civ.App.1941, err. dismd). Reservations of property rights in the landowner or limitations or restrictions on the condemnor's rights under the easement sought are valid as limited easements. Southwestern Bell Telephone Co. v. West, 417 S.W.2d 297 (Tex.Civ.App.1967, writ ref'd n.r.e.); Wiseman v. State, 406 S.W.2d 253 (Tex.Civ.App.1966, writ ref'd n.r.e.).; Texas Power & Light Co. v. Lovinggood, 389 S.W.2d 712 (Tex.Civ.App.1965, writ ref'd n.r.e.); Holcomb v. City of Dallas, 315 S.W.2d 454 (Tex.Civ.App.1958, writ ref'd n.r.e.); Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958). See 7 A.L.R.2d 364–407 (1949).

We disagree with the holding of the Court of Civil Appeals to the effect that Paragraphs 8 and 9 and the subdivisions (a) and (b) thereof were limitations of the easement sought by condemnor. We hold that the trial court properly sustained special exceptions to these provisions. They are mere promissory statements or declarations of future intentions by a condemnor, the effect of which would defeat the landowner's right to recover in one condemnation proceeding for all damaging causes that affect the value of the strip condemned and the damages that tend to depreciate the value of the remainder.

This pipeline has already been constructed. There is testimony to the effect that crops have been damaged on and off of the strip; that the irrigation system has been adversely affected; that caliche from the ditch is now on the surface of the strip and on the remainder, adversely affecting the soil for agricultural use. The necessity to re-enter the land in the future for repair and maintenance would probably result in similar damage.

In eminent domain proceedings our courts have consistently held that the landowner cannot recover for damage to crops, loss of trees, ornamental shrubs, etc., as separate items. These features can be taken into consideration in determining compensation only insofar as they affect the market value of land, *as land*. City of Austin v. Long, 296 S.W.2d 624 (Tex.Civ.App.1956, writ ref'd n.r.e.) ; Taylor v. City of Austin, 291 S.W.2d 399 (Tex.Civ.App. 1956, writ ref'd n.r.e.) ; Texas & St. Louis Railway Company v. Matthews, 60 Tex. 215 (1883).

The landowner is entitled to compensation in money at the time of taking for the difference in market value of the easement strip and remainder before and after taking. The landowner is not burdened with the delay and expense of future lawsuits, Tex.Const. Art. I, Sec. 17, Vernon's Ann.St.; Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642 (1956); City of La-Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243 (1943); State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979 (Com.App.1936); See also Rayburn, Texas Laws of Condemnation, page 253, Sec. 369.

In Little v. Loup River Public Power District, 150 Neb. 864, 36 N.W.2d 261, at page 263, 7 A.L.R.2d 355, the petition in condemnation was quoted in part: "This applicant does not desire the fee title, but a 100 foot easement, and * * * obligates itself to pay all future crop damages incident to the maintenance and reconstruction of said line when and as such damages occur." Error was claimed because the offer in evidence of the quoted statement was refused. On appeal, this ruling of the trial court was upheld. We approve of the following statements in that opinion: (page 264)

"The proposal in the application of appellant herein quoted is promissory in its terms and relates only to acts to be performed upon contingencies to arise after the appropriation has been completed. If this proposal were operative, any action because of a failure to perform its terms would be one for damages on an unliquidated claim. This would be a source of frequent if not fruitful litigation. The proposal of appellant would deny appellees their right to recover in one action the damages which the Constitution guarantees them in consequence of a taking of a part of their land and the making of a construction thereon, and would limit them to another action or actions for damages in the event appellant and appellees could not agree on the future damages to be paid by appellant under terms of this proposal. Fortunately this is not the law. Appellees were assured by the Constitution of the state recovery in one action of the whole amount of the damages they sustained because of the taking without the delay or expense of future lawsuits. Art. I, s. 21, Constitution of Nebraska; Pierce v. Platte Valley Public Power and Irrigation District, [143 Neb. 898, 11 N.W.2d 813] supra; Robinson v. Central Nebraska Public Power & Irrigation District, 146 Neb. 534, 20 N.W.2d 509; Snyder v. Platte Valley Public Power & Irrigation District, 140 Neb. 897, 2 N.W.2d 327. See, also, De Penning v. Iowa Power & Light Co., Iowa, 33 N.W.2d 503, [5 A.L.R.2d 716]; Milwaukee Electric Ry. & Light Co. v. Becker, 182 Wis. 182, 196 N.W. 575."

In Texas Power & Light Co. v. Cole, supra, there was a petition in condemnation containing a promise by the condemnor to pay future crop damages. It does not appear from the opinion that the landowner excepted to the provision in the petition in condemnation or made any other objection thereto. We approve the holding that the provision permitting the landowner the exclusive right to mine for gravel up to a certain date constituted a reservation of a proprietary right in the landowner and a limitation of the rights under the easement acquired. That provision specifically stated that the right of the landowner to mine for gravel would be the dominant estate

for the period stated. Neither the Supreme Court opinion nor the Court of Civil Appeals opinion passed upon the "future crop damage" provision; and there is no indication that the question was presented to either court by point of error.

■■ We hold that the trial court did not err in sustaining a special exception to Paragraph 9(c) with reference to building on the strip as being too vague and indefinite. In order to create a proprietary right in the landowner and restrict the easement sought by the condemnor, the type building, foundation, size, etc. should be delineated. This can be accomplished by a proper amendment and would be valid. Holcomb v. City of Dallas, *supra*.

■ We disapprove Holcomb v. City of Dallas, supra, insofar as it approves an instruction that the City of Dallas would pay all costs in connection with the removal and restoration of improvements permitted to rest on the storm sewer—if in the maintenance of the sewer it should become necessary to disturb any improvements. That opinion does not reflect the contents of the statement in condemnation nor the special exceptions thereto, if any. The only objection by the landowner was directed to the court's instruction to the jury. The wording or content of such objection does not appear in the opinion. We hold that in a statement in condemnation a provision promising to pay for damages in the future is subject to special exception.

■ We hold that the trial court properly sustained the special exception to Paragraph 10. Standing alone, this paragraph is meaningless.

The landowner contends that the Court of Civil Appeals erred in holding that the trial court committed harmful error in allowing the transcript of the testimony of Dan B. Grubbs, taken before the special commissioners, to be read into evidence.

The substance of Grubbs' testimony that was admitted by the trial court was: that condemnor would have the right to re-open the pipeline ditch once a month, if it so desired; that condemnor could leave the ditch open for ninety days or six months; that condemnor, in re-digging, can dig. it up and put all of the topsoil back on top of the pipe and put caliche back on top of the top and leave rocks twelve inches big standing all over the right of way.

■ For testimony given by a witness at a former trial to be admissible in a subsequent trial between the same parties in a civil case, Texas courts make three requirements. (1) The former trial must have been on substantially the same issues. (2). At the former trial there must have been an opportunity for cross-examination. (3) The witness at the time of the subsequent trial must have been unavailable to testify. The latter is established when it is shown that the witness is dead or insane or physically unable to testify or is *beyond the jurisdiction of the court,* or that his whereabouts are unknown and that a diligent search has been made to ascertain his whereabouts or that he has been kept away from the trial by the adverse party. The trial court's exercise of discretion in admitting testimony at the former trial is limited to a determination of the factual predicate. Each and every one of these requirements is essential in establishing the proper predicate for the admissibility of the transcript of testimony in another trial. Houston Fire & Casualty Insurance Co. v. Brittian, 402 S.W.2d 509 (Tex.Sup.1966); Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681 (1951). This is particularly true in eminent domain proceedings because the hearing before the commissioners is an administrative proceeding and not a trial. Denton County v. Brammer, 361 S. W.2d 198 (Tex.Sup.1962); Pearson v. State, 159 Tex. 66, 315 S.W.2d 935 (1958).

The transcript of the testimony of the witness Grubbs at the hearing before the special commissioners should not have been admitted in evidence at the subsequent trial. At the time of trial in the county

court in Deaf Smith County, Grubbs resided in Wharton County, nearly 800 miles distant. This fact was known by landowner more than two and one-half months before going to trial. Though residing outside the range of subpoena, Grubbs was *not* outside of the jurisdiction of the court. The deposition of Grubbs could have been taken.

Grubbs could not so testify to these matters even had he been present in court. His answers represented his erroneous interpretation of the rights of condemnor under its easement herein sought and contrary to special provisions hereof, which read in part as follows:

"After the same has been laid, any and all ditches opened by condemnor will be backfilled and leveled in such manner that said real estate will be left in substantially the same condition as when entered upon by condemnor. * * * In initial construction and at any time thereafter that the surface is disturbed, condemnor will cut its pipeline ditch in such a manner as to separate topsoil and subsoil, and will, in backfilling, place subsoil in the bottom of the trench and restore the topsoil as nearly as possible to the top of the pipeline ditch;"

and the law applicable thereto.

■ It is the duty of the trial court, by way of instruction in the court's charge to explain the rights of the parties under the particular easement being sought. Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958). The extent of the easement sought and the rights of the parties thereunder is one of law. Contrary to what the jury probably inferred from Grubbs' testimony, condemnor would not be permitted, in the maintenance and operation of its pipeline, to do any more than would be reasonably necessary to accomplish the intended purposes for which the condemnation is sought. Most unusual circumstances would have to be present to authorize the condemnor to leave the pipeline ditch open for a period of ninety days or six months. Baer v. Dallas Theater Center, 330 S.W.2d 214 (Tex.Civ.App.1959, writ ref'd n.r.e.); Myers v. Texas Eastern Transmission Corporation, 306 S.W.2d 751 (Tex.Civ.App. 1957, writ ref'd n.r.e.); J. M. Huber Petroleum Co. v. Yake, 121 S.W.2d 670 (Tex.Civ.App.1938, n.w.h.); Magnolia Pipeline Co. v. McCarter, 52 S.W.2d 663 (Tex.Civ.App.1932, n.w.h.); 28 C.J.S. Easements, Sec. 76(b), p. 754; 25 Am.Jur. 2d 478, Easements and Licenses, § 72.

■ We are of the opinion that this error of the trial court in admitting the testimony of Grubbs amounted to such a denial of the rights of condemnor as was reasonably calculated to cause and probably did cause an improper judgment in the case. That such harm resulted is clearly evidenced by the question submitted by the jury during deliberations: "We don't recall the following being covered: In the event the line ditch was re-opened by Natural for repair, etc., would the company [Natural] be required to put the land back in same manner as before? [The same as agreed prior to laying the line.]" To which the trial judge replied: "The court instructs the jury that the evidence being closed that the court is not permitted to answer the questions submitted."

We affirm the judgment of the Court of Civil Appeals.

CALVERT, C. J., and WALKER and REAVLEY, JJ., concur in the result.