**STATE of Texas, Appellant,**

**v.**

**J. M. FROST, Jr., et al., Appellees.**

**No. 314.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 15, 1970.

Rehearing Denied June 17, 1970.

Second Rehearing Denied July 8, 1970.

Crawford C. Martin, Atty. Gen., Dudley Fowler, C. W. Pearcy, Asst. Attys. Gen., Houston, for appellant.

F. Russell Kendall, Vinson, Elkins, Searls & Connally, Houston, for appellees.

BARRON, Justice.

This is a condemnation suit resulting from the consolidation of two cases brought by the State of Texas and the County of Harris as plaintiffs to condemn the fee simple title to 31.63 acres of land out of the Frost 230.14 acre tract fronting on the East Freeway (also State Highway 73) in Houston, Texas. The purpose of the taking was the creation of an interchange between Interstate Highway 10 (formerly State Highway 73), Interstate Highway 610 and U. S. Highway 90 East. The total remaining land owned by the Frosts consisted of 198.51 acres. Damages to such remainder forms the controversy on this appeal, occasioned by the taking of the south or front 31.63 acres by plaintiffs in condemnation, which land is an irregular shaped parcel with an approximate 750 foot frontage on the westbound lane of State Highway 73 and an approximate 616 foot frontage on Oates Road, the latter road extending along the east side of the original 230.14 acre tract of defendants. By agreement the date of taking was fixed as of February 20, 1962, and the case came to trial on April 1, 1969. The State made the requisite deposits in 1962 and was entitled to and did take possession of the 31.63 acre tract. The State had the right immediately to commence construction of its roadway system on the condemned land. In the intervening years the State did build a road between the Frost remainder and the East Freeway, which is a service or frontage road near and parallel to the Freeway some 350 feet to 750 feet south of the nearest property line of appellees' remaining property.

As stated above, defendant's remainder consisted of 198.51 acres, but because of the peculiar shape of the taking it was divided into a northwest remainder of 177.82 acres and an east remainder of 20.69 acres, the latter being across the proposed U. S. 90 right-of-way, both of which after the taking front on the right-of-way for proposed U. S. Highway 90, as shown by the plat marked Exhibit "A."

The cause proceeded to trial on the First Amended Original Statement or Petition for condemnation, containing the following language relative to access rights:

"That Plaintiff, in the exercise of the police power for the preservation of human life and safety, and under existing laws, has designated said highway as a Controlled Access Highway, and roads are to be built as a part of said highway whereby the right of ingress and egress to or from the remaining property of defendants abutting on said highway has not and is not to be denied as of Feb. 20, 1962."

The trial court's judgment was entered based upon the jury verdict in answer to special issues finding the value of the 31.63 acres taken to be $303,500.00, and the value of the remainder before the taking to be $1,889,000.00, and the value of the remainder after the taking to be $1,211,500.00. It is from this judgment that the State has appealed.

The State of Texas as appellant has brought forward five points of error, the first three points dealing with alleged damages allowed for loss of access, which is allegedly a non-compensable item in a case of this kind. Appellant's first three points of error are verbatim as follows:

## "POINT OF ERROR NO. ONE

"The court erred in refusing to sustain the appellant's objection to the special instructions 4 and 5 in the court's charge which special instructions constituted a comment on the weight of the evidence, and were not supported by either the pleadings or evidence, instructed the jury that the appellant was taking a greater estate in land than it prayed for, and amounted to an instruction to the jury that it must award damages to the remainder for denial of access, in a case where access was not denied.

## "POINT OF ERROR NO. TWO

"The court erred and abused its discretion in refusing to permit appellant to file its second trial amendment, which would have further clarified the pleadings as to the ultimate issues and evidence in the cause, without prejudice to appellees the evidence was undisputed that the appellees' remainder was not to be denied access to existing facilities pending construction of proposed frontage roads, such refusal by the trial court to permit the state to file its trial amendment amounted to such a denial of the state's rights as was reasonably calculated to cause and probably did cause the rendition of an improper and excessive judgment.

## "POINT OF ERROR NO. THREE

"The trial court erred in ruling and holding over appellant's objections that there was a denial of reasonable access to the defendants' remaining land as a matter of law, and in so charging the jury to this effect by instructions nos. 3, 4 and 5 in its charge."

In the statement and argument under all three points of error above, it appears that appellant is complaining that the trial court erred in regarding this suit as an "access denied" case and erroneously instructed the jury accordingly; that the evidence shows that the testimony of appellees erroneously dealt with loss of access and that such matter is noncompensable and the verdict excessive. We shall consider the above in connection wtih the formal points of error. Perkins v. Ingalsbe, 162 Tex. 456, 347 S. W.2d 926, 928. The alleged error was properly preserved below.

By points of error 4 and 5 appellant complains of the trial court's excluding from the jury as an admission against interest evidence of the sale by appellees shortly after the taking, of a part of appellees' remaining land for $12,500.00 per acre, because the sale price was inconsistent with

appellees' claim of damages to appellees' remainder, even though the sale was made by appellees to a condemning authority with power of eminent domain, Houston Lighting & Power Company.

Appellees relied principally on the testimony of three witnesses to prove damages to their remainder of 198.51 acres after the taking by appellant of the 31.63 acre tract, George Reed, Duncan Allen and John Foster. The jury's verdict is supported by the testimony of the above witnesses who testified that damages to the remainder ranged from a total of $937,000.-00 to $1,105,289.00. The State's evidence showed no damages to the remainder. The jury found damages to the remainder to be $667,500.00. However, appellant contends, and we think correctly, that loss or restriction of access to such remainder was extensively developed by the testimony of appellees' expert witnesses, and it is obvious to us that damages were arrived at to a material extent by reason of diversion of traffic resulting in the necessity of using circuitous routes, required use of frontage or service roads in lieu of direct access to the highway, limited access to the Freeway, loss of traffic passing in front of such remainder and similar matters which have clearly been held to be not compensable under the law of this State. See City of Beaumont v. Marks, 443 S.W. 2d 253, (Tex.Sup.); City of Houston v. Fox, 444 S.W.2d 591, (Tex.Sup.); Pennysavers Oil Co. v. State, 334 S.W.2d 546, (Tex.Civ.App.), writ ref.; State Highway Commission v. Humphreys, 58 S.W.2d 144, (Tex.Civ.App.), writ ref.; Holbrook v. State, 355 S.W.2d 235, (Tex.Civ.App.), writ ref., n. r. e.; City of San Antonio v. Easley, 368 S.W.2d 683, (Tex.Civ.App.), writ ref., n. r. e. In City of Beaumont v. Marks, supra, it was said:

"It is well settled that abutting property owners, under proof such as presented here, have certain property rights in existing streets and highways in addition to their right in common with the general public to use them. Generally, the most important of these private rights is the access to and from the highway or street (Citing cases). This right of access has been described as an easement appurtenant to the abutting land, which includes not merely the ability of the abutting landowner to enter and leave his premises by way of the street or highway, but also the right to have the premises accessible to patrons, clients and customers." (Citing authorities).

In the same case 443 S.W.2d at pp. 256, 257 and 260, the Supreme Court stated that it was harmful error to allow introduction of the objectionable evidence for the jury's consideration in determining its answers to the special issues submitted, and that diversion of traffic resulting in the necessity of using circuitous routes is not compensable.

In its brief and by statements in its oral arguments before this Court the State makes no contention that the trial court erred in the admission of the testimony of appellees' witnesses, though some of it was objected to, but it relies wholly on the claimed error of the trial court in its special instructions numbers 3, 4 and 5 of the court's charge to the jury, the argued matter concerning noncompensable damages, and the claimed error and abuse of discretion of the trial court in refusing to permit the State to file its second trial amendment which, it is contended, would have further clarified the pleadings as to the ultimate issues and evidence in this case. The charge of the court was not brought forward in the transcripts, but the appropriate instructions in connection therewith are shown by appendices in the briefs of the parties. The three special issues submitted to the jury by the court and answers thereto are shown in the judgment brought forward.

In connection with appellant's first three points of error dealing with access of the 198.51 acre remainder, the trial court gave the following instructions to the jury, numbers 3, 4 and 5:

"INSTRUCTION NO. 3

"You are instructed that the 31.63 acres of land taken by the State of Texas from Defendants herein is intended for use in part for the laying out, opening, constructing, reconstructing, maintaining and operating of Controlled Access Highways, that said highway has been designated as a Controlled Access Highway, and roads are to be built as a part of said highway whereby the right of ingress and egress to or from the remaining property of Defendants abutting on said highway has not and is not to be denied, as of February 20, 1962. The State of Texas has condemned the fee simple title to the 31.63 acres; provided, however, there is excluded from said estate to be condemned all the oil, gas and sulphur which can be removed from beneath said land without any right whatsoever remaining to the owners of such oil, gas and sulphur, of ingress or egress to or from the surface of said land for the purpose of exploring, developing, drilling, or mining same.

"INSTRUCTION NO. 4

"You are further instructed that the presumption is that the State of Texas will exercise its rights and use of the 31.63 acres of land taken from Defendants to the fullest extent of the rights acquired which are described in this charge, which rights include the right of excluding Defendants from any use of the 31.63 acres of land taken other than the rights existing in Defendants by virtue of the fact that roads are to be built as a part of said highway whereby the right of ingress and egress to or from the remaining property of Defendants abutting on the highway has not and is not to be denied as of February 20, 1962.

"INSTRUCTION NO. 5

"You are instructed that by virtue of the lands condemned by the State of Texas as a portion of a Controlled Access Highway, the State Highway Commission is authorized and empowered:

"(a) to deny access to or from such Controlled Access Highway whether existing, presently being constructed or hereafter constructed upon all or portions of said land, from or to the remaining lands of Defendants adjacent thereto, and from or to any streets, roads, highways or any other public or private ways intersecting such Controlled Access Highway, except at specific points designated by the State Highway Commission; and to close any such public or private way at or near its point of intersection with such Controlled Access Highway;

"(b) to designate points upon such Controlled Access Highway, or any part of any such highway, at which access to or from such Controlled Access Highway shall be permitted;

"(c) to control, restrict, and determine the type and extent of access to be permitted at any such designated point of access;

"(d) to erect appropriate protective devices to preserve the ulitity, integrity, and use of such Controlled Access Highway; and

"(e) to modify or repeal any order entered pursuant to the aforesaid powers.

"Provided, however, that none of the foregoing alters the existing rights of Defendants to compensation for damages suffered as a result of the exercise of such powers by the State Highway Commission under the Constitution and laws of the State of Texas."

Prior to the receiving of testimony, appellant moved to suppress evidence concerning damages involving circuity of travel, inconvenience, re-routing of traffic and restriction of access to the remaining property of appellees as being not compen-

sable in this action, but the trial court overruled such motion. See State v. Baker Bros. Nursery, 366 S.W.2d 212, 214, (Tex. Sup.). Appellant timely objected and excepted to the giving of special instructions number 3, 4 and 5 in the court's charge and timely requested the following special instruction:

"You are instructed as a part of the law in this case that roads are to be built as a part of the highway whereby the right of ingress and egress to or from defendants' remaining property abutting on said highway has not and is not to be denied as of February 20, 1962."

Such requested instruction was denied by the court. The grounds relative to access were brought forward in appellant's motion for new trial and in points of error on this appeal. Objections and exceptions have been sufficiently preserved.

The evidence shows that at all times since the inception of this condemnation action, appellees have had the right of access to and from their remaining land to existing highway facilities with no more expense or inconvenience than they would have had before the taking. Appellees' right of access to the nearest existing facilities has not been taken, blocked, diminished or precluded in any way by appellant. Both the part taken and the remainder are today in almost the identical condition that they were on the date of taking. However, after approximately seven years, nothing except the construction of a frontage road near the East Freeway has been done toward the construction and development of U. S. 90. The evidence shows that appellees' remainders would eventually have access to frontage roads to be constructed along U. S. 90, but such road and frontage roads have not yet been built and no definite time has been established when they will be built.

Appellees contend or admit that the evidence does not show a denial of access and that their witnesses' testimony did not indicate a restriction or denial thereof. On the other hand appellees contend that their principal damages to such remaining property is based on a change of access from the heavily travelled East Freeway (I.H. 10) to the proposed and uncompleted U. S. 90 frontage roads. Their contention is that the damages result from this change of location. Appellees further say that the State has taken everything that appellees owned in the 31.63 acre tract with exercise of complete dominion thereover, and that whatever the State Highway Engineer might allow in the interim is nothing but a permissive use that could be terminated by the State at any time. By the latter contention above, appellees apparently refute their own admission that access has not been taken.

■ We recognize, of course, that any change of location such as is shown in this case, whether the change be great or small, is a possible basis for some damage to property, but we do not believe that the witnesses for appellees based damages strictly on change of location but injected access into the case and based damages to a material extent thereon. As a good example of the testimony offered by appellees, a portion of the testimony of Duncan Allen is shown:

"Q. Now, Mr. Allen, in your opinion, was the value of the remainder of the property immediately after the taking affected by the taking?"

"A. Very definitely, sir."

"Q. Give us your reasons for so stating, Mr. Allen."

"A. The prime and principal reason was that the character of the property had been changed and to a degree, the property is isolated. It has less access. Now, we have got a problem in this respect. We must appraise this as if the improvements that are projected for part of this taking will be erected in the reasonably foreseeable future,

but since this taking which occurred in February of '62, no improvements have been erected on that property adjacent to the remainder. The principal remainder, or any of the remainders for that matter—in other words, the freeway here which is extending up through here is, I guess you would say still in the proposed state."

"Q. Well, I will show you Defendant's Exhibit No. 12 and does that help you in explaining what you are talking about here? What freeway are you talking about?"

"A. I am talking about this Northeast Freeway. This is still in a proposed state. So as a result, this access road that would have served this property is not in existence yet, and the property has been removed from the main East Freeway here, which gave it considerable value and substance in that access from this main East Freeway back through the property would have increased the value considerably as time went on, because the traffic flow here is extremely heavy. They have some traffic flow figures, and roughly, we are supposed to have about 9,000 cars a day flow over the main freeway. The little access road that sits back here that will serve this property has a figure, well I can't see the figure on it, but I had studied it somewhere else."

"Q. Well, I will show you defendant's 13."

"A. Yes sir, it has the figure of 230 cars, so imagine yourself being removed from an artery that had 9,000 cars a day and placed on an artery that had 230 cars. This is several hundred feet back from the highway and since it is back from that big interchange, that is going in there, there will be some high dumps that you can't see over from one side to the other of the freeway in some respects, and due to the fact of the flow of traffic and the property has been altered, but the property itself has just changed its character completely because it no longer enjoys the benefits of this well known East Freeway address, and it is removed to the rear here and is not much more than rear properties back in that area at this time."

On cross-examination the witness said:

"Q. Tell me what is is about frontage that makes it valuable to property, frontage on a highway?"

"A. Well, access to the main stream of traffic, the greater the access to the main stream of traffic, the greater the value."

"Q. Well, are there any other attributes on frontage that gives frontage land value, or makes it valuable to have frontage?"

"A. Well, of course, the greater the frontage the greater the view. Possibly might lend to some extent additional value. It would depend on the use of the property, the type of use the property is going to get and whether or not this view ends of it would be required."

"Q. O.K. Are there any other attributes of frontage that give land value?"

"A. I don't know of any at this particular moment you might have reference to."

"Q. Now, then, with reference to the access to the mainstream of course you put $10,000 an acre on these remainders immediately before the taking and you have diminished that to $5,000 an acre immediately after the taking?"

"A. This is correct, yes, sir."

"Q. Now, is this diminishment of $5,000 an acre because the property owners of the remainders after would not have access to the main road or the frontage road?"

"A. To the East Freeway, yes, sir."

\* \* \* \* \* \*

"Q. Now, then, Mr. Allen, with reference to access, access off of this remainder after the construction is all completed would be to this frontage road right here, wouldn't it?"

"A. Yes, sir, that is correct."

"Q. And from examination of Defendant's Exhibit No. 12, you know that this property has access all along that frontage road, don't you?"

"A. Yes, sir."

"Q. And to obtain access to that frontage road and get into town, all you would have to do is come to the frontage road and then to Gilhorn and go right on in to town, isn't that right?"

"A. Yes, you could come that route."

"Q. And then, coming out from town, all you would have to do is come along here, drop off at the ramp down here at Mercury, and go up Mercury and come under Mercury and come back around, isn't that right?"

"A. That is possible to go that route."

The testimony of the witnesses George Reed, John Foster, W. H. Keenan and Fernando Williams was similar regarding access to the remainder though some of the testimony of each witness attributed damages to the change of location from the East Freeway to U. S. 90 when U. S. 90 is completed. The evidence shows, however, that access has not been denied either to U. S. 90 or to the East Freeway, though after the completion of U. S. 90 the route which must be taken to the East Freeway might be circuitous. See Pennysavers Oil Co. v. State, supra. Appellees' access to the present freeway will be in the future by way of Mercury Drive on the east, by way of the North Loop on the west and contiguous road (Oates Road) along the east boundary of appellees' remainder. When U. S. 90 is constructed and completed, Oates Road will be closed as a through street. Highway 90 intersects and takes 616 feet of Oates Road, but the road will still be available separately to the east remainder and to the northwest remainder of appellees' land. Appellees' right of access was not taken by the State, and appellant's contention, its offered second trial amendment and its pleadings, insured that access was not at any time to be denied. The right of access, or the right of ingress and egress, is an easement appurtenant to the remaining land and is not taken unless the petition in condemnation specifically calls for its taking. Such rights of ingress and egress were included in the judgment of the court consistent with the first trial amendment.

The contention made by appellees that after the taking of the 31.63 acre tract the presumption that the State will exercise its rights and use and enjoy the property taken to the full legal extent, does not apply to appellees when reservations of property rights in the landowner, or limitations or restrictions on the condemnor's rights under the taking, are valid as limited easements. See White v. Natural Gas Pipeline Co. of America, 444 S.W.2d 298, 300, (Tex.Sup.), and cases cited; Wiseman v. State, 406 S.W.2d 253, (Tex.Civ.App.), writ ref., n. r. e; Southwestern Bell Telephone Co. v. West, 417 S.W.2d 297, (Tex.Civ.App.), writ ref., n. r. e. Appellees contend, however, that the right of ingress and egress contained in the trial amendment and as supplemented by appellant's tendered second trial amendment as noted above, were nothing but

promissory statements made by appellant in an effort to reduce its obligations under the law incurred by the taking. It is further contended by appellees that the reservations made by the State were not relative to a right granted appellees but to a privilege which might be granted, refused, or, if granted, revoked at the pleasure of appellant. We overrule such contentions, and we hold that such reservations are not promissory statements but are property rights and easements. We agree that provisions in pleadings to the effect that a landowner can continue to farm upon and irrigate across a strip taken and the remaining land during and after the construction period, and that condemnor would from time to time remain liable for damages to crops resulting from the construction, operation and maintenance of a pipeline, and that the parties could enter into a contract containing the above provisions and they would be binding and valid stipulations, as in the White case above, constitute mere promissory statements or declarations of future intentions by a condemnor and are invalid, or they constitute mere offers made by the condemnor and not accepted by the landowner. And we agree that evidence showing that before, during and after construction of a highway, which it was estimated would take three years, a condemnee would suffer no damages to the remainder because condemnee would be *permitted* to fence under a bridge and, generally, so far as physically possible, he would be *permitted* to use the land condemned as it was used prior to the condemnation, amount to mere promissory statements of future intentions and could be revoked at the pleasure of the condemnor. See Creighton v. State, 366 S.W.2d 840, (Tex. Civ.App.), writ ref., n. r. e. Cases such as White v. Natural Gas Pipeline Co. of America, supra; Perkins v. State, 150 S.W.2d 157, (Tex.Civ.App.), writ dismd.; Hill v. State, 289 S.W.2d 801, (Tex.Civ. App.), no writ; Willcockson v. Colorado River Municipal Water Dist., 436 S.W.2d 203, (Tex.Civ.App.), writ ref., n. r. e.,

are not here in point. The case of City of Corpus Christi v. Polasek, 404 S.W.2d 826, (Tex.Civ.App.), no writ hist., is distinguishable in that the case was not one in which an owner's former right of access to a public facility, appurtenant to his remainder, was being retained in the owner's favor. p. 832.

■ Again, we do not say in the instant case that no damages can be shown to appellees' remainder. On the other hand we do say that damage for alleged change in location and character of the remaining property, dividing the remaining property by the right-of-way of U. S. 90, and other possible items can be grounds for recovery if competent proof shows such damages. But the injection into this case of loss or restriction of access to the involved highways is a matter under these facts which we hold to be not compensable under the law. We hold that within the meaning of the Constitution access has not been materially and substantially impaired, and that reasonable access has existed at all material times in favor of appellees abutting on the highway as well as access to or from existing facilities. City of Waco v. Texland Corp., 446 S.W. 2d 1, (Tex.Sup.); Pennysavers Oil Co. v. State, supra.

■ A condemning authority has the right to dismiss as to a portion of the land sought to be condemned or to relinquish rights originally sought by condemnation when this may be done without injury to the landowner. Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W. 2d 524, 539; Thompson v. Janes, 151 Tex. 495, 251 S.W.2d 953; Southwestern Bell Telephone Co. v. West, supra. No prejudice is shown to appellees in this case, and the status quo has not changed. The law is clear that the condemnor has the right to amend its pleadings and take less. A condemnor should not be required to take more land or rights in land than it needs nor secure unnecessary rights and privileges, and the condemnor should be al-

lowed to abandon such unnecessary lands or rights. Texas Power & Light Co. v. Cole, supra; State v. Nelson, 160 Tex. 515, 334 S.W.2d 788. While we do not base our decision in this case strictly upon the refusal of the trial court to permit appellant to amend its petition further to clarify this matter, we hold that appellant should have been permitted to so amend under the circumstances of this case. The appellant's second trial amendment would have added the following language to the trial amendment shown above, " * * * access to existing facilities has not and is not to be denied during or pending construction of frontage roads, nor thereafter to constructed frontage roads." This amendment might have clarified this confusing situation.

We see no particular objection to the trial court's instruction number 3, and we do not see any reversible error standing alone in the giving of instruction number 4. Number 4, however, is confusing and cannot easily be understood. We think that such instruction accomplishes little and may have been harmful to the appellant by reason of its lack of clarity on the question of the right of ingress and egress. But we feel that the trial court's giving of instruction number 5 to the jury is reversible error, and so confused and abridged the appellant's position in this case that a new trial is required. The witness for appellant, McClure, on cross-examination by appellees, at the request of the attorney for appellees, read into the evidence a portion of Art. 6674W–1 (Powers of Commission), and at the time there was no objection made by appellant's attorneys. However, when the trial court decided to instruct the jury upon such statute, timely objection was made by appellant that there was no evidence to support such instruction; because it amounted to an instruction on access which was contrary to the pleadings and constituted a different, enlarged and greater taking than is pleaded or sought and amounted to a refusal to permit the appellant to

take only those rights which it had sought in its pleading; and because the instruction would lead the jury to award non-compensable damages under the police powers and the laws of the State. Instruction number 5 simply takes away the right of the State of Texas in this lawsuit to reserve access rights to appellees' remaining property, by informing the jury that the State Highway Commission was empowered at any time to deny, control, restrict and determine the type and extent of access to be permitted at any such designated point of access, "Provided, however, that none of the foregoing alters the existing rights of Defendants to compensation for damages suffered as a result of the exercise of such powers by the State Highway Commission under the Constitution and laws of the State of Texas." The jury might logically have believed that access was then being taken away by the State Highway Commission, and that damages should be assessed accordingly. Instruction number 5 was harmful error also because it led the jury to disregard the pleadings and evidence of appellant and to presume that the extent of the taking was the fullest extent permitted by the authority granted in Article 6674W–1, Vernon's Ann.Tex.Civ.St. Of course, Sec. 2 of said statute above, does empower the Highway Commission to alter or deny access except at specific points designated by the Highway Commission, but right of compensation of the landowner is given if and when such powers are invoked. There is clearly no requirement that such powers ever be exercised. See also State v. Meyer, 403 S.W.2d 366, 371, (Tex.Sup.); DuPuy v. City of Waco, 396 S.W.2d 103, 108, (Tex.Sup.); Adams v. Grapotte, 69 S.W.2d 460, (Tex.Civ.App.), aff'd. 111 S.W.2d 690, (Tex.Sup.). The right of access is private property and it cannot be taken for public purposes without adequate compensation being made therefor. Vernon's Ann.St.Const. Art. 1, Sec. 17. Access was not taken in this case.

Special instruction number 5 should not have been given, and we hold that the

allowance of same particularly as considered with instruction number 4, so prejudiced, misled and confused the jury that reversible error is shown. We cannot hold that such charge constituted harmless error under the circumstances of this case. Instructions of the court are most important in a case of this kind. City of Beaumont v. Marks, supra, 443 S.W.2d at pp. 256–257; Texas Power & Light Company v. Lovinggood, 389 S.W.2d 712, 716, (Tex. Civ.App.), writ ref., n. r. e.; 11 Baylor L. Rev. pp. 165–166.

■ The State contends that exclusion from the jury of evidence of a sale by appellees of a 4.9956 acre tract of land, after the taking by the State, to Houston Lighting & Power Company, an entity with power of eminent domain, on May 4, 1962 for a recited consideration of $12,500.00 per acre, was error. The State contends that such sale amounted to an admission against interest and was inconsistent with appellees' claim that the value of the remainder after the taking was between $4,000.00 and $6,250.00 per acre. We have carefully considered the contentions of the State, and we are of the opinion that the evidence was properly and correctly excluded by the trial court.

After the taking of the 31.63 acre tract by the State, the involved 4.9956 acre tract became a corner tract of land with frontage on proposed U. S. 90 and Oates Road. If anything, the original taking by the State benefited the 4.9956 acre tract. The tract was an unsevered part of the east remainder of 20.69 acres mentioned above.

■ Texas courts have consistently held that proof of sales of property to a corporation or a governmental agency having power of eminent domain is not admissible in a condemnation suit. Gomez Leon v. State, 426 S.W.2d 562, 565, (Tex. Sup.); Menchaca v. San Antonio Indep. Sch. Dist., 297 S.W.2d 363, (Tex.Civ.App.), writ dismd.; Eleventh Street Baptist Church v. State, 410 S.W.2d 228, (Tex. Civ.App.), no writ hist. Appellant states

that the basis for the above rule is that property owners under threat of condemnation may well tend to sell their property at a price less than market value in order to avoid the expense and time of litigation. The reason given for the rule by the authorities is that under such circumstances the sales do not meet the willing seller-willing buyer concept; they are made under a direct or an implied threat of condemnation and, theoretically at least, are not free and voluntary. If the rule is a good one, as the State admits, it must be applied uniformly against landowners and condemning authorities alike. The rule cannot be applied only when it meets the needs of the State. See Menchaca v. San Antonio Indep. Sch. Dist., supra, 297 S.W. 2d pp. 365–366.

Another factor which is equally relevant is the fact that when property is acquired for a public purpose, a landowner usually is entitled to the value of the property taken and damages to the remainder of the landowner's property by virtue of the taking. In a transaction of this kind, the landowner knows he must sell or be condemned, and there is no free and voluntary transaction. But also, it should be recognized that the sum of money paid the landowner by a condemning authority includes in it not only the market value of the land taken, but damages to the remainder, in this case approximately 15 acres of the appellees' east remainder. The location of electrical facilities adjacent to property can often result in damages to that property.

This rule of exclusion has been applied in favor of the State on numerous occasions. See Hodges v. State, 437 S.W.2d 447, (Tex.Civ.App.), writ ref., n. r. e.; Eleventh Street Baptist Church v. State, supra; State v. Layton, 147 S.W.2d 515, (Tex.Civ.App.), no writ hist. And see City of Austin v. Capitol Livestock Auction Co., 453 S.W.2d 461. It has also been applied in favor of the landowner and against the State. Gomez Leon v. State, supra.

We overrule appellant's points of error numbers 4 and 5 and hold that the trial court did not commit error in excluding such testimony.

No complaint has been made of the market value found by the jury of the 31.63 acre tract in the taking. Accordingly we sever that portion of the lawsuit from the portion seeking damages to the remainder of appellees' property by reason of such taking and affirm the judgment insofar as the taking of the 31.63 acre tract is concerned. We reverse and remand the remaining portion of this cause to the trial court for a new trial.

Affirmed in part and reversed and remanded in part.

## On Appellees' Motion for Rehearing

By supplemental transcript we have been furnished a copy of the trial court's charge to the jury in this case.

Appellees contend that we erred in our original disposition of the case, because appellant waived any right to complain of special instruction number 5 by its failure to object to the reading of Art. 6674W–1 to the jury, by the introduction of a copy of the statute into evidence and by the statement during the trial by the attorney for appellant that such statute should properly be in the charge of the court. Appellees further complain that it had the right to inform the jury by instruction of the rights of the State under a controlled access highway and that instruction number 5 was proper.

In an involved condemnation case such as this one, it is practically impossible for a trial court to control certain evidence which may be introduced by either side of the controversy. It was not error to admit evidence showing changes in the roads and highways brought about by the taking, diversion of traffic, circuitous routes necessary to reach the property, use of frontage roads in lieu of direct access, limited access to the Freeway, loss of traffic and other factors. Under our view it is, therefore, immaterial that one of the parties first introduced evidence of the above and that the other was required to rebut the testimony. We believe the only manner by which the trial court could properly control the effect of the evidence was the use of appropriate special instructions to the jury in a case of this type. In City of Beaumont v. Marks, 443 S.W.2d 253, 256–257, (Tex.Sup.), it was said under similar circumstances:

"Generally, the matter of what may be considered by the jury and what may not be considered will be best determined by the trial court in the admission and exclusion of testimony rather than by instruction to the jury. *DuPuy*, supra; State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 200 (1936). However, we think a special instruction would have been more appropriate in this instance. It was not error to admit the evidence depicting the changes in the streets brought about by the construction and the circuitous routes necessary to travel in reaching the Plaintiff's property; however, it was harmful error to fail to instruct the jury that the diversion of traffic from the old to the new and the 'circuity of travel' cannot constitute a deprivation of reasonable access. Diversion of traffic resulting in the necessity of using circuitous routes is not compensable. (citing cases). A special instruction would have adequately informed the jury that it could not consider such evidence in determining the market value of Plaintiff's property."

And in the case of Texas Power & Light Company v. Lovinggood, 389 S.W.2d 712, 716–717, (Tex.Civ.App.), writ ref., n. r. e, it was said:

"Appellees also argue that appellant's pleadings were read to the jury and the jury heard the evidence, therefore no harm could have resulted from the omission of the requested instructions. But the force and effect of pleadings and

evidence on a jury are much less than the court's instructions. A jury can hardly be expected to remember the details of the condemnor's petition read at the beginning of a trial; neither can the jury know that the rights and limitations of the condemnor in the use of the easement are determined by the petition. And of course the jury is not required to believe the testimony of the witnesses offered by a condemnor. On the other hand the court's instructions become the law of the case and are to be accepted by the jury as the guide on which they must rely."

The State properly made objections to the court's charge in regard to special instruction number 5 and brought the alleged error before this Court. Moreover, we do not believe that it was necessary to give instruction number 5 to explain appellant's rights under a controlled access highway, and we believe the charge was unusually harmful under the peculiar facts of this case.

Appellees assert that the appellant waived error in submission of instructions 3, 4 and 5 relative to access because appellant originally failed to bring forward in its points of error in this Court any complaint concerning special instruction number 8. Special instructions number 7 and 8 are as follows:

"Instruction No. 7

"You are instructed that in answering Special Issue No. 3 you shall not consider for any purpose injuries, if any, sustained or received by Defendants' remaining property arising from or due to any additional circuity of travel that results to a vehicle moving between any other point and Defendants' remaining property by reason of the construction of the controlled access highway with frontage roadways providing ingress and egress to and from said highway and Defendants' remaining property."

"Instruction No. 8

"You are further instructed that accessibility is a factor which you may take into consideration in determining the market value of the two remainders of the Frost Estate properties after the taking on February 20, 1962."

■ What instruction number 7 gave, instruction number 8 was in conflict therewith. Considering the court's charge we must concede that appellant's original points of error are defective, but the entire thrust of appellant's first three points of error and its argument deal with access or "accesibility" as used in instruction number 8. Such argument dealing directly with access, comprises approximately two-thirds of appellant's brief. Appellant fully objected to the giving of instruction number 8 by timely exceptions to the charge and clearly raised the point in its motion for new trial. Since the rendition of the original opinion in this case, appellant has filed a supplemental brief to include a point of error dealing with instruction number 8 with leave of this Court. See Minneapolis-Moline Company v. Purser, 361 S.W.2d 239, 246, (Tex.Civ.App.), writ ref., n. r. e., and cases cited. Furthermore, there are factors other than "circuity of travel" in this case not covered by instruction number 7 above and which are non-compensable under these circumstances.

■ Appellees further contend that whether or not their access has been materially or substantially impaired is of no legal consequence in this case. Appellees take the position on rehearing that such test applies only to cases where there has been no condemnation of a portion of the land. We have been cited no genuine authority which makes such a holding, and we overrule the contention.

■ Contention is finally made that since appellant took possession of the 31.63 acres condemned by making the required deposit in 1962, and appellant having made

improvements on said condemned property, appellant could not amend its petition during trial seven years later to reduce the estate taken. The State's petition for condemnation was filed June 15, 1962 and included a general allegation granting ingress and egress to or from the remaining property of defendants abutting on the highway, and included a statement that ingress and egress was not to be denied. Under such allegation the award of the commissioners was made. The first and second trial amendments were merely clarifications of the original pleadings, including the clarification of rights of appellees in the interval between the taking and the completion of construction of U. S. 90. However, we think the State had the right under the circumstances to amend and take less at any reasonable time during trial of this case, and we do not believe that any injury was thereby suffered by the landowners by reason of the State's relinquishment or clarification of access.

We correct our statement that the road constructed since 1962 on the property condemned runs wholly parallel to the freeway, and we concede that appellees are correct in their assertion that such road is parallel only for a short distance and then heads in almost a 90 degree angle up the North Loop away from Interstate 10, as shown by the attached plat.

The 31.63 acre tract taken extends from appellees' remainders to the East Freeway right-of-way only a short distance away. We are convinced that right of ingress and egress was reserved to appellees from such remainders to the East Freeway or to the nearest road or service road constructed or to be constructed since the taking. Adams v. Grapotte, 69 S.W.2d 460, (Tex.Civ.App.), aff'd 111 S.W.2d 690, (Tex.Sup.); Gulf Refining Co. v. City of Dallas, 10 S.W.2d 151, 161, (Tex. Civ.App.), writ dismd. The involved remainders have at all material times bordered on or "abutted" on continuous highway property which extends to the East Freeway or to the nearest service road.

We believe that access has not been denied at this point or at any other point pending construction of U. S. 90 under the evidence and the State's pleadings, as the tendered trial amendment would have clearly revealed. It is undisputed that access will continue to be provided when U. S. 90 is completed.

We remain convinced that this action involving damages to appellees' remainder should be reversed and remanded, and that consideration by the jury of non-compensable damages, particularly under special instruction number 8 above, renders the judgment of the trial court excessive as appellant contends.

The motion for rehearing is respectfully overruled.