**CITY OF TYLER, Texas, Appellant,**

v.

**ARP NURSERY COMPANY et al.,
Appellees.**

No. 463.

Court of Civil Appeals of Texas,
Tyler.

Feb. 5, 1970.

Rehearing Denied March 5, 1970.

Second Rehearing Denied March 26, 1970.

H. L. McGee, Jr., W. M. Williams, Jr., Tyler, for appellant.

Spruiell, Lowry, Potter, Lasater & Guinn, Chas. F. Potter, Tyler, for appellees.

MOORE, Justice.

This is a condemnation case brought under the provisions of Art. 3264 et seq., Vernon's Ann.Tex.Civ.St. Condemnor, City of Tyler, filed its petition in condemnation seeking to condemn the surface estate only upon three contiguous tracts of land containing 168 acres owned by condemnees, L. A. Dean and S. Clark Kidd, doing business as Arp Nursery Company. The purpose of the taking was for the construction of a lake to improve the City's water supply. Special Commissioners appointed by the County Judge of Smith County awarded the condemnees-landowners $29,-024.00 for the taking of their surface estate of their property. Not being satisfied with the award, condemnees objected to the award and appealed to the County Court. In their objections to the award, the landowners allege that they were in the business of operating a nursery upon a portion of the property taken, and that the compensation awarded them by the Special Commissioners was inadequate in that it failed to award them sufficient compensation for the land including the nursery stock of seedling pecan trees located thereon. While the cause was pending before the County Court, the City of Tyler filed its first amended original petition, by which the City, for the first time, sought to except from the taking the nursery stock consisting of a vast number of small pecan trees. That portion of the City's amended petition seeking to except the trees, alleged as follows:

"Less and except, however, and there is specifically excluded from the property sought to be acquired by these proceedings all seedlings and grafted trees growing upon the above described property on the date of its acquisition by the City of Tyler, the right of landowners herein to remove all of said seedlings and grafted trees from said property having been theretofore acknowledged and the consent for such removal given by the City of Tyler."

Upon motion of the condemnees, the foregoing allegation of the City's petition was stricken, to which action of the Court the City seasonably excepted. By its third amended petition, the City of Tyler offered the landowners the use of, as well as unlimited access to, all of the fully grown graftwood trees located upon the property lying 377 feet above the spillway level, which the landowners were using for the purpose of taking buds and other graftwood to be grafted on the younger trees and granted the landowners a perpetual easement to use the trees for that purpose.

After a trial before the court, without the aid of a jury, the trial court rendered judgment for the condemnees-landowners for the sum amount of $172,168.00, including the sum of $29,024.00 awarded by the Special Commissioners, and the judgment further granted the landowners an easement for the purpose of going on the land and using the graftwood trees. The City of Tyler duly perfected this appeal.

The question presented is whether the growing nursery stock consisting of the pecan seedlings and grafted trees located on the land in question is to be considered as part of the realty in arriving at the cash-market value of the land, or whether the nursery stock is to be considered as personalty.

Upon the request of the City of Tyler, the trial court filed findings of fact and conclusions of law. The following findings of fact as numbered by the trial court appear to be material to this appeal, to-wit:

"15. Arp Nursery planted four blocks of pecan trees (including a few black walnut and Japanese persimmon but which have substantially the same value as pecan and they are all hereafter referred to as pecan nursery trees.)

Block 1, 5.89 acres, planted 1960

Block 2, 5.1 acres, planted 1961

Block 3, 7.07 acres, planted 1962

Block 4, 6.02 acres, planted 1963

The blocks of trees were grown up to the time of taking by usual horticultural practices. This includes preparing the land for two years prior to planting, by planting a cover crop, plowing it under, keeping it cultivated and fertilized in an effort to build up the soil to a good condition. The nuts are then planted in rows at close intervals. These are called seedlings. The seedlings are grafted to different varieties. The fifth year, the harvesting of the grafted trees is begun by a selective hand-digging process, with the trees dug as they are needed for sale. The harvesting of the trees is continued in this manner about five years. Bringing the trees up to the age of five years requires a continuous process of fertilization, cultivation, hand-hoeing, spraying, poisoning gophers, controlling insects and disease, all of which requires great expense.

"16. The Court finds that on the different blocks there were the following nursery pecan trees:

| | |
|---|---:|
| 4 and 5 year old seedling trees (Blocks 1 and 2) | 170,000 |
| 3 year old seedling trees (Block 3) | 175,000 |
| 2 year old seedling trees (Block 4) | 180,000 |
| Grafted trees | 50,818 |

"17. A portion of these were culls. In valuing the property the court made a reasonable allowance for culls.

"18. The Court finds that there were 129 graftwood trees on the 168 acre tract at the time of taking. Ninety-eight of these trees were destroyed, either because they were inundated by water or so close to the water's edge that they died. Thirty one of the trees were returned to Defendants by Plaintiffs under Plaintiff's Third Amended Petition hereinabove referred to.

"20. The Court finds that the nursery stock trees and the 98 graftwood trees (not returned to Defendants) substantially enhanced the value of the land. The reasonable market value of the land, with the nursery stock and 98 graftwood trees (above referred to) was $172,168.00 on January 24, 1966, at the time of taking.

"21. In arriving at the market value of the land, I did not allow any duplication of values. I did not consider what the nursery stock might have been harvested and sold for, deducting the cost of harvesting and sale, but rather, I considered it as part of the land and that it had the effect of increasing the land value. With reference to the graftwood trees, I considered only how they affected (enhanced) the value of the property while located on and forming a part of the land itself. I did not consider future profits which might have been realized from the nursery stock or

the graftwood trees. I did not consider the nursery stock or the budwood trees as a part of a going business nor as separate items of damage, but only as part of the land, as elements going to make up the market value of the land itself. In general I considered only admissible evidence as it applied to the issues before the Court."

With respect to the 98 large, grown graftwood trees growing on the land, the city concedes the trial court had a right to take into consideration the value of such trees in arriving at the cash-market value of the land. But as to the small seedlings and grafted trees, the City contends that in view of the fact that the undisputed evidence shows that the condemnors planted the seedlings and grafted trees with the express purpose of subsequently harvesting and selling the same on the market, the trial court erred in refusing to find that these trees partook of the nature of a stock of goods thus being personalty. Based upon this premise, the City asserts that since the evidence conclusively shows that the seedlings and grafted trees partook of the nature of personalty rather than realty, the trial court erred in taking into consideration the value of the seedlings and grafted trees in arriving at the cash-market value of the land. We do not share this view.

■ At common law, growing trees, shrubs and other plants were generally a part of the realty to which they were attached by their roots. City of Los Angeles v. Hughes, 202 Cal. 731, 262 P. 737 (1927), 125 A.L.R. 1406. The common law prevails in this state where not inconsistent with the constitution or the laws of this state. Art. 1, V.A.T.S. We are not familiar with any statute or constitutional provision and have been cited none, changing the common-law rule that growing trees constitute a part of the realty. Consequently, we think the record compels the conclusion that the trees and nursery stock in question, as a matter of law, constituted

permanent improvements to the land and as such formed a part of the realty.

■ In determining whether improvements pass with the title to the condemned land, the same rule applies as that which governs between an ordinary vendor and vendee. State v. Miller, 92 S.W.2d 1073 (Tex.Civ.App., Waco, 1936). If the nursery stock constituted a part of the realty, title to the nursery stock would pass with the title in an ordinary conveyance. It follows, therefore, that in the absence of an agreement to the contrary, the City would be required, as held by the trial court, to accept and pay for the trees along with the surface of the land so condemned.

■ The rule in condemnation cases is that when a tract of land is taken, which is covered by trees, growing crops, etc., the existence of these features can be taken into consideration in determining the compensation, so far as they affect the market value of the land, but the market value as land, remains the test. Texas & St. Louis Railway Company v. Matthews, 60 Tex. 215 (1883); Ft. Worth & D. S. P. Railway Co. v. Gilmore, 2 S.W.2d 543 (Tex.Civ.App., Amarillo, 1928, n. w. h.); White v. Natural Gas Pipeline Company of America, 444 S.W.2d 298 (Tex.Sup.Ct., 1969); Arkansas State Highway Commission v. Hood, 237 Ark. 202, 372 S.W.2d 387 (1963); 29A C.J.S. Eminent Domain § 173, pp. 732, 733. Consequently, we are of the opinion that the trial court was authorized to take into consideration the value of the seedlings, grafted trees and the 98 graftwood trees as they enhance the value of the land in arriving at the cash-market value.

■ By the seventh and final point of error the condemnor urges that the trial court erred in refusing to allow it to file its first amended petition. In this connection, the City takes the position that it had a right to reduce and abandon any of the rights taken in the original proceeding. Thus, the City says that since the evidence shows without dispute that the trees had

a market value, the City had a right to return the trees to the landowners in order to prevent economic waste. As we construe the argument, the City says it had this right even though the seedlings and grafted trees constituted permanent improvements to the land. We think the contention is without merit.

■ In State v. Miller, 92 S.W.2d 1073 (Tex.Civ.App., Waco, 1936, n. w. h.), it is stated:

"* * * The remedy of eminent domain, * * * is a harsh one and must be exercised in accord with the strict principles appertaining thereto. * * * Such proceeding is in the nature of an enforced sale in which the agency so appropriating the land stands in the position of a buyer. Consequently, it must either take the land with the permanent improvements thereon as it stands and pay for it accordingly, or reject it in toto. It cannot strip the improvements therefrom and compel the owner to provide other land to receive the salvage, and then rightfully insist that the owner is fully compensated by the payment of the value of the naked land so appropriated. * * *" See also Breithaupt v. State, 321 S.W.2d 361 (Tex.Civ.App., Waco, 1959, err. ref'd, n. r. e.); State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979 (Com. of App., Sec. A., 1936); Nichols, Eminent Domain, Para. 13.1, p. 347.

■ By its original statement in condemnation, the City sought to acquire the surface estate in its entirety. The award of the Special Commissioners granted the City title to the land in toto, including all improvements thereon. The City took possession of both the land and the nursery stock on January 24, 1966. If the nursery stock constituted a part of the realty, as we have held, we do not believe the City would be authorized to require the landowners to remove the improvements and then rightfully insist that the owners may be fully compensated by the payment of the value of the naked land. State v. Miller, supra.

■ While we recognize the rule that a condemnor may, in some instances, relinquish a part of the rights taken in order to prevent economic waste under the decision in Texas Power & Light Company v. Cole, 158 Tex. 495, 313 S.W.2d 524, the rule is subject to the condition that the condemnor may not relinquish, dismiss or abandon any of the rights taken, where to do so would operate to the prejudice of the landowners. Brazos River Conservation & Reclamation Dist. v. Allen, 141 Tex. 208, 171 S.W.2d 842, 844 (1943); Brunson v. State, Tex., 444 S.W.2d 598. In the case before us the City made no attempt to relinquish any of its rights until it sought to file its amended petition. This was more than two years after the taking. In the meantime, the evidence shows that the nursery stock had deteriorated from lack of care. The evidence also shows that the soil around the trees had become sodded with grass, so that harvesting the trees would have been difficult. Thus as a result of the city's taking and detention of the land and nursery stock, the landowner's rights have been prejudiced and the status quo cannot be restored. Brunson v. State, supra. Under these circumstances the doctrine of economic waste is not applicable, and the trial court properly refused to allow the city to file its first amended petition seeking to relinquish the "taking" of the nursery stock.

The judgment of the trial court is affirmed.

McKAY, J., not participating.

ON MOTION FOR REHEARING

On motion for rehearing, the City complains of our failure to discuss its second point of error asserting that the trial court erred in excluding certain evidence which the City says was sufficient to show that the parties themselves did not consider the nursery stock as a permanent part of the land. The City argues that the excluded testimony was sufficient to at least raise a fact issue upon the question of whether

or not the parties intended to treat the nursery stock as removable personal property and that the trial court erred in refusing to admit such testimony.

The testimony referred to was from the testimony of two of the three special commissioners who heard the case, and is before us by way of a bill of exception. One of the commissioners, R. D. Allen, testified that at the time of the condemnation hearing, the question was brought up as to whether it would be permissible for Arp Nursery to remove the seedlings and grafted trees and that Troy Smith, the city attorney, told the owners of the Arp Nursery that they could remove them. He also testified that he, as a commissioner, "understood" that permission or consent was given the landowners to remove the seedlings and grafted trees. Upon being asked as to what his understanding was as to whether or not Arp Nursery would remove them, he said "Well, I don't know. We assumed that they would move them." The other special commissioner, Harold Phipps, testified that during the hearing he overheard a conversation between the city attorney and L. A. Dean, one of the landowners, with reference to the removal of the seedlings and grafted trees. Although he said he could not remember the exact words, he testified: "I believe Mr. Smith was asked if it was possible for them to take the growing stock off the land and how much time they had and he said 'Yes', that there would be no opposition to them handling it in that way. At that time, they estimated it would be approximately 2 years before the lake would encroach on the property."

The general rule is that things permanently affixed to the realty by the vendor such as growing crops and trees are not removable but pass to the vendee in the absence of an agreement to the contrary. 25 Tex.Jur.2d 408, Sec. 15, Fixtures; Ft. Worth & D. S. P. Railway Co. v. Gilmore, supra; 92 C.J.S. Vendor and Purchaser § 287.

As we view it, the foregoing testimony falls short of showing an agreement between the parties changing the status of the nursery stock from realty to personalty. While the testimony may be sufficient to show that the city so agreed, there is absolutely no testimony that the landowners agreed to accept the nursery stock as personalty and remove the same from the land. In the absence of an agreement, agreed to by both parties, we do not believe that the city could unilaterally tender the nursery stock to the landowners and then rightfully insist that the owners would be fully compensated by payment for the naked land. State v. Miller, supra. Since the record fails to show that the landowners agreed to such an arrangement, the excluded testimony showing nothing more than a unilateral agreement on the part of the City was immaterial. Hence we fail to see how the action of the trial court in refusing to admit it into evidence would constitute error.

Motion for rehearing is overruled.

McKAY, J., not participating.