Court of Appeals
Fourth Court of Appeals District of Texas



## OPINION

No. 04-12-00009-CV

**HANFORD-SOUTHPORT, LLC**,
Appellant

v.

**CITY OF SAN ANTONIO**, Acting By and Through the San Antonio Water System,
Appellee

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2010-ED-0008
Honorable Tom Rickhoff, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:         Catherine Stone, Chief Justice
                 Karen Angelini, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  November 7, 2012

AFFIRMED

This is an appeal from a final judgment in a statutory condemnation case.  *See* TEX. PROP. CODE ANN. § 21.011-.025 (West 2004 & Supp. 2012).   In this appeal, appellant Hanford-Southport, LLC ("Hanford-Southport") does not challenge the condemnation; rather, Hanford-Southport challenges the amount of the condemnation award.   We affirm the trial court's judgment.

**BACKGROUND**

The City of San Antonio, Acting By and Through the San Antonio Water System ("the City") filed a condemnation proceeding in May of 2010, seeking to condemn a 14.42 acre permanent easement to expand its sewer capacity. The property upon which the City sought the easement was a 306.875 acre tract of land in Bexar County owned by Hanford-Southport. At the time the City filed the condemnation action, the land owned by Hanford-Southport was undeveloped, though some of it had been cleared. The land is covered by natural trees, shrubs, and other flora.

Before the condemnation action, Hanford-Southport or its predecessor in interest had filed and received approval for two separate Master Development Plans. However, both plans expired for lack of development. Additionally, a Tree Stand Delineation Plan expired, as well as a Utility Service Agreement Hanford-Southport entered into with SAWS. Hanford-Southport filed a third Master Development Plan with the City for consideration, but Hanford-Southport had not fulfilled all administrative requirements necessary for approval when the condemnation action was filed. No commercial development had begun because it was not feasible and development in the "reasonably foreseeable future" was unlikely.

After the petition was filed, the trial court appointed three Special Commissioners "to assess the damages of the owners of the property being condemned." *See* TEX. PROP. CODE ANN. § 21.014. The Special Commissioners awarded Hanford-Southport $502,222.00. The City deposited the full amount of the award with the trial court clerk. Before the award was deposited, Hanford-Southport filed objections to the award, but withdrew the award six days after it was deposited. *See id.* § 21.018. It is undisputed that once Hanford-Southport withdrew the money, the only issue Hanford-Southport was entitled to contest at trial was the amount of

the award. *See State v. Jackson*, 388 S.W.2d 924, 925 (Tex. 1965) (holding that by accepting award of Special Commissioners, landowner is precluded from contesting State's right to take property); *City of Austin v. Hall*, 446 S.W.2d 330, 335 (Tex. Civ. App.—Austin 1969) (holding landowner may not contest taking of property after accepting condemnation award; by taking award landowner has consented as required before private property may be applied to public use with adequate compensation), *dism'd*, 450 S.W.2d 836 (Tex. 1970), *Jim Wells Cnty. v. Cook*, 410 S.W.2d 325, 326 (Tex. Civ. App.—San Antonio 1966, no writ) (holding Texas courts have consistently held that landowner who accepts amount awarded by Special Commissioners in condemnation cannot thereafter question power of condemnor to take land).

Thereafter, the matter proceeded to trial before the court.[1] Both sides presented evidence regarding methods for property valuation and based thereon, the value of the property. The major dispute at trial, and on appeal, is whether the native trees and brush on the condemned property had any historic or other value independent of the value of the land as land. The trial court concluded it did not. In its judgment, the trial court awarded Hanford-Southport $601,625.00. Hanford-Southport requested, and the trial court issued, findings of fact and conclusions of law. Hanford-Southport asked the trial court to reconsider its judgment and requested additional or amended findings and conclusions. The trial court declined to reconsider its judgment and did not adopt the additional or amended findings proposed by Hanford-Southport. Hanford-Southport then perfected this appeal.

### ANALYSIS

The following are the trial court's findings of fact and conclusions of law as they relate to Hanford-Southport's complaints in this appeal:

---

[1] The case was initially set for a jury trial, but while jury selection was underway, Hanford-Southport withdrew its jury demand and requested a bench trial.

Findings of Fact

\* \* \*

20. The Landowners presented evidence of a market for persimmon trees and other flora for specialty buyers, but not a sustainable market for such trees or other varieties of trees and shrubs from the property.

21. The Court heard evidence that the trees and shrubs on the property significantly enhance the value of the property but the evidence was insufficient to make an exception from the established rules that the flora was not to be valued independent of the land.

22. After consideration of the evidence, the Court finds that, as of the date of taking, the fair market value of the entire property before the taking was $7,671,875.00 based on a per acre value of $25,000.00 per acre.

23. The Court finds that, as of the date of taking, the fair market value of the part taken as a permanent easement is $342,475.00.

24. The Court finds that, as of the date of taking, the fair market value of the remainder of the property before the permanent easement was taken was $7,329,400.00.

25. The Court finds that, as of the date of taking, the fair market value of the remainder of the property after the permanent easement is taken, considering the uses to which the easement will be subjected, is $7,070,250.00.

26. The reduction in fair market value for the remainder after the acquisition of the permanent easement is based upon my conclusion that the 41.18 acres south and west of the easement were damaged in the amount of $209,250.00 and that the acres north and east of the easement were damaged in the amount of $49,900.00.

27. The Court finds that, as of the date of taking, the difference between the fair market value of the remainder of the entire tract before the easement was taken and the fair market value of the remainder of the tract after the easement was taken, considering the uses to which the easement is subjected, is $259,150.00

28. Based on the above, Hanford-Southport, LLC is entitled to compensation in the amount of $601,625.00 for the taking of the easement and damages to the remainder of the 306.875 acre tract caused by the taking of the permanent easement.

Conclusions of Law

\*     \*     \*

2. The natural trees and shrubs existing on the property may not be considered as separate items of value but their value may be considered only as they may affect the value of the land, as land.

\*     \*     \*

6. Landowners, as owners of the land and trees, may, at their own expense, remove any trees and shrubs from the easement so long as they do not interfere with the work under the San Antonio Water System contract for construction and installation of the pipeline.

7. The court found that the Bexar Appraisal District appraisal was $25,000 per acre and believes the fact that the landowner and the appraisal district accepted this valuation is significant. Based on my findings as to the value of the easement taken and damages to the remainder, Hanford-Southport, LLC is entitled to judgment in the amount of $601,625.00.

Hanford-Southport challenges the numerous trial court findings and conclusions listed above. However, at its core, Hanford-Southport's argument below and on appeal is that the trees and other flora on the condemned property had value separate and apart from the value of the land, which affected the fair market value of the condemned property and the remainder, and therefore, the amount of the condemnation award. Hanford-Southport contends the trial court erred by disregarding its evidence regarding proper valuation methods, the value of the trees and flora based thereon, and the resulting land value.

Hanford-Southport presented its valuation evidence through experts and a landowner. Hanford-Southport provided evidence of value based on the trees and other plants within the easement area based on three methods: (1) replacement cost for the trees and flora based on local tree nursery wholesale pricelists, (2) replacement cost for significant trees based on mitigation fees established by the City, and (3) replacement cost based on the market value of discounted transferrable tree credits for 18,593 caliper inches of "protected trees." These different valuation

methods provided slightly different total values for the condemned property when the trees and flora were considered separately, but all yielded values of over $3,000,000.00. The valuation estimates provided by the landowner's experts also yielded values of over $3,000,000.00.

Hanford-Southport also produced evidence relating to the change in value of the entire tract when the loss of these trees and flora was considered. Evidence was also presented regarding the cost of site restoration, which included professional removal of some 500 trees from the easement area and replanting those trees. This expert also provided a market value for the 500 "best" trees. In sum, Hanford-Southport contended below, and contends here, that it was entitled to an award of over $5,000,000.00 for the fair market value of the condemned property and damages to the remainder when the value of the trees and flora are properly considered.

The City counters that the valuation methods proposed by Hanford-Southport are improper under Texas law. The City points out that the evidence shows Hanford-Southport never sold trees from the property and was not in the nursery business so as to potentially allow valuation of the trees separate and apart from the property itself. The City contends the valuation methods used by Hanford-Southport are irrelevant, and that the method used by its appraisal witness – the comparable sales approach – was the proper method of valuation given the proper standard for damages is the fair market value of the land at the time of the taking.

The evidence relating to valuation was certainly in dispute. However, the crux of the matter is whether, as a matter of law, the value of the trees and other plants can be considered apart from the value of the land as land so as to require an increased condemnation award. In other words, can the intrinsic value, if any, of the trees and other flora on the land be considered apart from the value of the land so as to increase the condemnation award to the landowners.

### *Standard of Review*

In an appeal from a bench trial, the trial court's findings of fact have the same force and effect as jury findings. *Hausman v. Hausman*, 199 S.W.3d 38, 41 (Tex. App.—San Antonio 2006, no pet.) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). Unchallenged findings of fact are binding on the appellate court unless the contrary is established as matter of law or there is no evidence to support the finding. *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 698 (Tex. App.—Dallas 2012, no pet.). When the appellate record includes a reporter's record, as it does here, findings of fact are not conclusive and may be challenged for sufficiency of the evidence. *Wells Fargo Bank*, 360 S.W.3d at 698–99 (citing *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003)). Findings of fact are reviewed under the same legal and factual sufficiency standards applicable to review of jury findings. *Hausman*, 199 S.W.3d at 41 (citing *Anderson*, 806 S.W.2d at 794). When undertaking a sufficiency analysis, we do not pass upon the credibility of witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). However, a factfinder's decision regarding credibility must be reasonable, and the factfinder cannot ignore undisputed testimony that is "clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Id.* at 820.

Appellate courts review a trial court's conclusions of law de novo, as a legal question, and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Bailey v. Gallagher*, 348 S.W.3d 322, 326 (Tex. App.—Dallas 2011, pet. denied) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). We may review a trial court's conclusions as drawn from the facts to determine their correctness.

*Id.* "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Marchand*, 83 S.W.3d at 794.

### *Applicable Law*

As noted above, the parties disputed the proper valuation method to be used to determine an award for the condemned property. The supreme court recently stated that compensation for land taken through condemnation is measured by the fair market value of the land at the time of the taking. *Enbridge Pipelines (East Tex.) v. Avinger Timber, LLC*, No. 10-0950, 2012 WL 3800234, *4 (Tex. Aug. 31, 2012) (citing *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 627 (Tex. 2002)). The objective of a condemnation award is to make the landowner whole. *Enbridge Pipelines*, 2012 WL 3800234, at *4 (citing TEX. CONST. art. I, § 17). Hanford-Southport contends that it should be permitted an increased award when the value of the trees and existing flora on the property are valued separately, using one of the methods it suggested through its experts at trial. The City argues this is incorrect, and that the condemnation award must be determined based on market value of the land as land, which takes into account features of the land without separately valuing those features.

The conclusions of law make it clear the trial court disregarded the methods and evidence put forth by Hanford-Southport because it concluded as a matter of law that the trees and other flora could not be valued separately from the land. Thus, the determinative question in this appeal is whether conclusion of law number two is legally correct. The other conclusions are essentially part of, or flow from, this general conclusion. Thus, if conclusion of law two is correct, the judgment must be affirmed. *See Bailey*, 348 S.W.3d at 326 (citing *Marchand*, 83 S.W.3d at 794).

In *White v. Nat. Gas Pipeline Co. of Am.*, 444 S.W.2d 298, 301 (Tex. 1969), the supreme court restated longstanding Texas law with regard to a condemnee's ability to recover for loss of crops, trees, and other flora on the condemned property:

> In eminent domain proceedings . . . the landowner cannot recover for damage to crops, *loss of trees, ornamental shrubs*, etc. as separate items. These features can be taken into consideration in determining compensation only insofar as they affect the market value of the land, as land.

(emphasis added). This has been the rule in Texas since at least 1883, when the supreme court held:

> In estimating the value of [a condemnee's] property, no separate account should be taken of the trees cut from the land, but the value of the land taken with the trees growing on it should be assessed. They are part of the realty and should not be separated from it in arriving at the value of the land.

*Tex. & St. Louis R.R. Co. v. Matthews*, 60 Tex. 215, 216 (1883). The court went on to hold that because the jury, under the court's charge, had valued trees on the property *separate* from the land, the award to the landowner was excessive. *Id.* (emphasis added). Accordingly, the court reversed and remanded for a new trial.

As noted by the supreme court in *White*, the law, as stated in *Matthews*, has been consistently followed by Texas courts. 444 S.W.2d at 301; *see, e.g., City of Austin v. Long*, 296 S.W.2d 624, 628 (Tex. App.—Austin 1956, writ ref'd n.r.e.); *City of Fort Worth v. Dietert*, 271 S.W.2d 299, 300 (Tex. App.—Fort Worth 1954, writ ref'd); *City of Tyler v. Arp Nursery Co.*, 451 S.W.2d 809, 812 (Tex. Civ. App.—Tyler 1970, writ ref'd n.r.e.); *Fort Worth & D.S.P. Ry. Co. v. Gilmore*, 2 S.W.2d 543, 545 (Tex. Civ. App.—Amarillo 1928, no writ). Other states have also held that although the existence of trees and flora can be taken into consideration in determining compensation to the landowner in so far as they affect the market value of the land,

but the market value as land, remains the standard. *See, e.g., Cramer v. Ark. Okla. Gas Corp.*, 872 S.W.2d 390, 392 (Ark. 1994); *Miss. State Highway Comm'n v. Viverette*, 529 So.2d 896, 900–02 (Miss. 1988); *Cross v. State*, 320 N.Y.S.2d 625, 626–27 (N.Y. App. Div. 1971).

### *Application*

#### *Determining Market Value–Methodology*

Based on the applicable law, we hold the trial court correctly applied the *Matthews* rule, concluding it could not consider the trees, shrubs, and other flora separately in determining the proper value of the condemnation award. *See Matthews*, 60 Tex. at 216. Rather, the proper measure by which to value the condemned property was the market value of the land as land. *See White*, 444 S.W.2d at 301; *see also Enbridge Pipelines*, 2012 WL 3800234, at *4.

Hanford-Southport cites numerous cases to support its claim that the trial court should have taken into account the separate value of the trees and flora in determining the proper condemnation award. However, we hold the cases are distinguishable, inapplicable, or actually support the trial court's conclusion.

Hanford-Southport cites *City of Tyler v. Arp Nursery Co.*, for the proposition that it was entitled to compensation based on the intrinsic value of the trees or their replacement cost. *Arp* is distinguishable. In that case, the City of Tyler was condemning the landowner's property, a tree nursery, for a lake. *Arp Nursery*, 451 S.W.2d at 810. The court found, and the City conceded, that because some of the trees on the property were seedlings and graftwood trees, planted and carefully cultivated for use in the existing nursery tree business, it could take into account the separate value of those trees in determining the market value of the land. *Id.* This was not the issue on appeal; rather, the issue on appeal was whether the seedlings and graftwood

tress were personalty or realty. *Id.* at 811. The court held they were realty and thus to be considered in the market value determination. *Id.* at 811–12.

In this case, the condemned property was not operating as a nursery with trees and seedlings cultivated for sale as part of the business. In fact, the trial court specifically found in finding of fact 17 that Hanford-Southport never operated a nursery or sold trees as a business. Hanford-Southport does not actually contest this finding.[2] Thus, *Arp Nursery Co.* is inapplicable.

Next, Hanford-Southport cites *Lamar Cnty. Elec. Co-op Ass'n v. Bryant*, 770 S.W.2d 921 (Tex. App.—Texarkana 1989, no writ), for the proposition that when trees are permanently removed without necessity, the intrinsic value rule, rather than the fair market value of the land rule, applies. First, *Bryant* is not a condemnation case. Rather, in *Bryant*, the electric cooperative cut down trees on the landowner's property pursuant to its prescriptive easement for purposes of power line maintenance. *Id.* at 922. The landowner sued for negligence and gross negligence, seeking to recover the intrinsic value of the trees. *Id.* After the jury found removal of the trees was unnecessary, judgment was entered in favor of the landowner. *Id.* at 922–23.

On appeal, the parties stipulated that the cutting of the trees did not diminish the value of the property. *Id.* at 923. Accordingly, the court determined and the parties agreed that the proper measure of damages was the intrinsic value of the trees. *Id.*; *see also Porras v. Craig*, 675 S.W.2d 503, 506 (Tex. 1984) (holding that in trespass case there is no reduction in market value of property due to loss of trees, and measure of damages is intrinsic value of trees).

---

[2] Hanford-Southport states its brief should be read to include a sufficiency challenge to finding of fact 17. Hanford-Southport, however, concedes this finding is irrelevant to this appeal. More importantly, Hanford-Southport misreads the court's finding. Hanford-Southport states in its reply brief that "it was not in the landscape or nursery business as stated in the trial court's finding of fact number 17." The trial court did not find Hanford-Southport was in the landscape or nursery business; rather, it found Hanford-Southport had never been in the landscape or nursery business and had never sold trees or plants as a business.

In this case, however, Hanford-Southport vehemently argued, and still contends in this appeal, that the loss of the trees and flora diminished the market value of the condemned property as well as the remaining property. There was no stipulation or other agreement that the value of the property was undiminished by the condemnation. Accordingly, the intrinsic value rule of *Porras*, as stated in *Bryant*, is inapplicable. Moreover, this is a condemnation case, not a negligence case, and the proper valuation method in condemnation cases is the loss in fair market value of the property because of the condemnation. *See White*, 444 S.W.2d at 301.

Hanford-Southport also cites *Cummer-Graham Co. v. Maddox* in support of its position, specifically the court's statement that "[i]f the thing is destroyed or removed from real property, although a part thereof, has a value which can be accurately measured or ascertained without reference to the soil on which it stands, the recovery is the value of the thing thus destroyed or removed and not the difference in the value of the land." 155 Tex. 284, 285 S.W.2d 932 (1956). However, like *Bryant* and *Porras*, *Maddox* does not involve a condemnation. *Id.* at 932. Rather, in *Maddox*, Cummer-Graham acquired title to some timber from the owner of the land. *Id.* When it cut down the timber, it cut down timber not included in its deed, not just the timber covered by the deed. *Id.* The appellate court permitted the landowner to recover the value of the manufactured timber on the ground that Cummer-Graham was a willful trespasser, despite the existence of the deed. *Id.*

On review in the supreme court, the supreme court held the appellate court erred in the amount it permitted the landowner to recover, holding he was only entitled to "stumpage value," as this was a longstanding rule in a case of someone who mistakenly removes timber from the property of another. *Id.* at 935. The statement quoted by Hanford-Southport in support of its position is clearly limited to that situation. This is especially clear given that right after the quote

relied upon by Hanford-Southport, the supreme court specifically stated that if the trees had only value with reference to the land "such as for the purpose of shade or ornamentation" then the proper measure of damages would be the difference in the value of the land before and after the trees were removed. *Id.* at 936. Accordingly, rather than supporting Hanford-Southport's position, *Maddox* actually supports the trial court's conclusion that the trees could not be valued separately from the land as land.

Hanford-Southport next relies on a case out of this court, *City of San Antonio v. Michalec*, 418 S.W.2d 358 (Tex. Civ. App.—San Antonio 1967, writ ref'd n.r.e.). In that case, the City sought to condemn a piece of residential property for a public road. *Id.* at 359. At trial, an expert testified for the landowner as to the market value of the property before and after the condemnation. *Id.* at 359–60. The jury awarded the landowner $3,000.00, and judgment was rendered in that amount. *Id.* at 359. On appeal, the City complained that the landowner's expert had testified not simply to market value, but to "market value plus unique features." *Id.* at 360. After examining the entirety of the expert's testimony, this court held the City was incorrect. *Id.* at 360–61. We held the expert simply testified about the unusual features of the property that made it ideal for family use, thereby enhancing the value of the property, and that taking into account the unusual features of the property was part of determining market value. *Id.* The expert specifically testified that his opinion was based purely on market value. *Id.* at 360.

We noted that in *State v. Carpenter*, the supreme court agreed that in determining market value, it is appropriate to take into consideration those things pertaining to the land that a purchaser might consider. *Id.* (citing *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 199–200, *disapproved of on other grounds*, *State v. Meyer*, 403 S.W.2d 366, 371 (Tex. 1966)). Neither this court nor *Carpenter* held, however, that the unique or unusual features on the property

should be valued separately in determining the amount of the condemnation award. To the contrary, this court made it clear that any unusual features on the land simply went into the consideration of the market value of the land as land. Accordingly, *Michalec* does not support Hanford-Southport's position, but supports the trial court's judgment.

Hanford-Southport cites *Bexar County v. Falbo* for the proposition that if it is possible to remove valuable improvements on condemned property, the award to the owner should include the cost of relocation. 210 S.W.2d 658 (Tex. Civ. App.—Eastland 1948, writ dism'd). However, Hanford-Southport's position is not supported by the decision in *Falbo* for two reasons. First, the court of appeals specifically held that such recovery was permitted only because the case was tried on the theory that the landowner was going to remove the improvements from the condemned property to the remainder of the tract. *Id.* at 659. Second, in affirming the judgment, the court recognized that based on supreme court precedent the case was not submitted in the form generally recommended by the supreme court, but could "not see how [Bexar County] could have been injured by the manner in which it was submitted." *Id.*

*Falbo* is clearly distinguishable. The case before us was not tried on the theory that the trees and shrubs would be removed and replanted. Moreover, the City would clearly be injured if the cost of the trees and shrubs were considered separately–the condemnation award would increase from a little over half a million dollars to over five million dollars, constituting a boon for Hanford-Southport and exceeding the objective of making the landowner whole. *See Enbridge Pipelines*, 2012 WL 3800234, at *4 (citing TEX. CONST. art. I, § 17).

Hanford-Southport also relies on the court of appeals decision in *Enbridge Pipeline (East Tex.) L.P. v. Avinger Timber, L.L.C.*, 326 S.W.3d 390 (Tex. App.—Texarkana 2010), *rev'd*, 2012 WL 3800234, at *1. The court of appeals decision in *Enbridge Pipeline*, which held the

landowner's expert could take into account the existence on the property of a gas processing plant that would inure to the benefit of the condemnor, was reversed by the Texas Supreme Court after Hanford-Southport filed its brief. The supreme court reversed, holding the expert's testimony violated the value-to-the-taker rule, which prohibits measuring a land's value by its unique value to the condemnor in determining the proper condemnation award. *Enbridge Pipeline*, 2012 WL 3800234, at *1. Clearly, *Enbridge Pipeline*, as determined by the supreme court, does not provide support by Hanford-Southport's contention that the unique and historical trees and flora on the condemned easement should be valued separately to increase the amount of the award.

The other cases cited by Hanford-Southport throughout its briefs are similarly inapplicable or distinguishable. They do not support Hanford-Southport's position that it was entitled to recover, as part of the condemnation award, not only the value of the land, but the intrinsic value of the trees and flora separate and apart from the land.

### *Evidence of Market Value*

With regard to the evidence of actual market value of the land at the time of the taking, which is the proper valuation method, the City presented evidence from an appraiser, Lynn Eckmann, as well as the Bexar County Appraisal District tax records. Eckmann, taking into account applicable factors and using comparable sales, testified the land was worth $21,000.00 per acre. The appraisal district records showed Hanford-Southport has paid taxes on the property based on an appraisal rate of $25,000.00 per acre. In addition to presenting evidence of the intrinsic value of the trees and flora, Hanford-Southport presented evidence that the value of the property was $28,500.00 per acre. The evidence was disputed as to whether the trees and other

flora enhanced the value of the land as land. There was also disputed evidence about the value of the remainder of the property after the condemnation.

It was within the domain of the trial court, as trier of fact, to determine the credibility of the witnesses and resolve any conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819. Based on our review of the evidence, we hold there was evidence to support the trial court's determinations regarding the value of the condemned property as well as the remainder. Accordingly, we hold the trial court's findings of fact with regard to market value were supported by sufficient evidence.

## CONCLUSION

Based on the foregoing, we hold the trial court did not err in disregarding Hanford-Southport's methods of valuation and its results based thereon because Hanford-Southport was not entitled to value the trees and other flora separately from the land. Rather, precedent states that although trees and other improvements on the land can be considered as possible enhancements to the value of the land (if they actually enhance the value), they cannot be valued separately, and the market value of the land as land is the proper method by which a condemnation award is determined.

The evidence was disputed as to the market value of the land and the remainder, and whether the trees and flora pointed to by Hanford-Southport enhanced its value to the degree claimed by Hanford-Southport. It was the trial court's role, as trier of fact, to determine what evidence and which witness on value and possible enhancement value was credible. Clearly, the trial court found the City's evidence more persuasive.

Accordingly, we overrule Hanford-Southport's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice