**Opinion issued August 13, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00564-CV**

————————————

**KAY STEIN, Appellant**

**V.**

**GERARDA ELIZABETH DUENAS, Appellee**

---

**On Appeal from the County Court at Law No. 10**
**Bexar County, Texas**
**Trial Court Case No. 375064**[*]

---

## MEMORANDUM OPINION

Appellant Kay Stein challenges the legal sufficiency of the evidence to support the trial court's judgment, which held her liable for the value of

---

[*] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred the appeal to this Court. *See* Misc. Docket No. 14–9121 (Tex. Jun. 23, 2014); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases).

fraudulently transferred assets as a first transferee under the Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM. CODE § 24.009(b). Because the evidence is legally sufficient to support the trial court's finding that the debtor committed a fraudulent transfer with actual intent to hinder and delay Duenas's claim, *id*. § 24.005(a)(1), we affirm the trial court's judgment.

## Background

Maria Isabel Leon has been a personal friend of Kay and Dennis Stein since the early 2000s. They also had a business relationship. Leon sold imported building materials from a property she owned on Braniff Drive in San Antonio, Texas. Dennis Stein is a real estate developer and the sole owner of SteinReal Corporation, which owned a piece of undeveloped property adjacent to Leon's business.

In 2005, Leon agreed to lease SteinReal's adjacent property and use it to store materials for her business. Leon eventually fell behind on her lease payments, and by April 2011, she was 44 months behind on the rent, resulting in a debt to SteinReal of over $100,000. Nevertheless, Leon collaborated with Dennis Stein on a condominium development in 2010, with Leon providing materials to SteinReal. In keeping with their personal friendship, Leon was "very friendly" with Dennis Stein, who would sometimes visit the office, and she met with Kay Stein "on

numerous occasions." At times, Leon attended parties or other events with both of the Steins.

In the meantime, while the debt to SteinReal for unpaid lease installments was growing, Leon also became indebted to her good friend and former employee, appellee Gerarda Elizabeth Duenas. This appeal arises from Duenas's repeated attempts to collect the money owed to her.

After incurring her debt to Duenas, Leon borrowed $100,000 from Kay Stein in 2011, secured by a lien on Leon's property on Braniff Drive, which was her only valuable asset. Dennis Stein negotiated the transaction. However, only one-third of the loaned money was actually given to Leon; the remaining two-thirds was delivered directly to SteinReal. The resulting lien on Leon's property had the effect of impeding Duenas's attempts to collect on Leon's debt.

Duenas sued Leon and Kay Stein, alleging among other things that the 2011 loan and associated lien constituted a fraudulent transfer because "Leon granted liens on the [Braniff property] to Stein . . . with actual intent to hinder, delay, or defraud the creditor of the debtor." *See id.* § 24.002(12) (defining "transfer" to include "creation of a lien"). Accordingly, by her suit Duenas sought to set aside the 2011 loan and satisfy the remaining debt of $10,500. Leon left the country and Duenas proceeded on her cause of action to recover the value of the transferred asset from Kay Stein, in her capacity as a "first transferee." *See id*. § 24.009(b).

3

The case was tried to the bench, and the trial court entered a judgment in favor of Duenas and against Kay Stein on the UFTA claim. The court issued findings of fact and conclusions of law to support its decision.

**Analysis**

Stein challenges the trial court's judgment in a single issue on appeal. She contends that the evidence was legally insufficient to support the trial court's conclusion that the 2011 transaction was a fraudulent transfer. She does not assert any other legal challenge to Duenas's ability to recover from her personally, beyond her assertion that the loan transaction was not a fraudulent transfer.

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence to support them in the same manner as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Noble Mortg. & Invs., LLC v. D&M Vision Invs., LLC*, 340 S.W.3d 65, 74 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

When considering whether legally sufficient evidence supports a challenged finding, we must consider the evidence that favors the finding if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light most favorable to a finding and indulge every reasonable

4

inference to support it. *Id.* at 822. We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. Because the trial court acts as the factfinder in a bench trial, it is the sole judge of the credibility of witnesses. *Zenner v. Lone Star Striping & Paving, L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). As long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the factfinder. *City of Keller*, 168 S.W.3d at 822.

The appellant may not challenge a trial court's conclusions of law for factual insufficiency, but a reviewing court may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the conclusions of law de novo, and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *See id.*; *Hanford-Southport, LLC v. City of San Antonio*, 387 S.W.3d 849, 853 (Tex. App.—San Antonio 2012, pet. denied). Thus, no reversal is warranted if "controlling findings of fact will support the judgment

5

under a correct legal theory." *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 17 (Tex. App.—San Antonio 2006, pet. denied).

In this case, the trial court's judgment held Stein liable for "engaging in a fraudulent transfer in violation of the [UFTA] as set forth in [Duenas's petition]." In turn, Duenas's petition alleged that the transaction in question was a fraudulent transfer under multiple theories, including both actual-intent and constructive fraudulent transfer. *See* TEX. BUS. & COM. CODE §§ 24.005–.006. Thus to prevail on appeal, Stein must establish that the evidence is insufficient to support any of the theories; we will affirm the court's judgment if any theory is supported by the evidence. *Marchand*, 83 S.W.3d at 794.

Among her issues on appeal, Stein contends that there was no evidence that she engaged in the 2011 transaction with Leon with the actual intent to hinder, delay, or defraud Duenas. *See* TEX. BUS. & COM. CODE § 24.005(a)(1). This argument fails to articulate a valid legal challenge to the judgment to the extent it is based on the actual-intent theory of fraudulent transfer.[1]

---

[1] Stein appears to base her argument on the premise that the trial court found that she, not Leon, made the transaction in question with fraudulent intent. The court's judgment actually states that Stein was liable to Duenas for "engaging in a fraudulent transfer in violation of the [UFTA] *as set forth in Plaintiff's First Amended Original Petition . . . .*" (Emphasis supplied.) Duenas's live petition expressly stated that "Leon granted liens on the property to Stein and Nederman with actual intent to hinder, delay or defraud [Duenas], a creditor of the debtor." To the extent that Stein is referencing the trial court's conclusions of law, which stated that "Kay Stein

A transfer made by a debtor is fraudulent for purposes of the UFTA if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. *See id.* § 24.005(a)(1). It is not an element of the cause of action to show that the transferee also engaged in the transaction with fraudulent intent. *Id.*; *accord S.E.C. v. Res. Dev. Int'l., LLC*, 487 F.3d 295, 301 (5th Cir. 2007) (explaining that the transferee's intent or knowledge is irrelevant to establishing a fraudulent transfer, because the statute "requires only a finding of fraudulent intent on the part of the 'debtor'"). Because Leon is the debtor in this case and Stein is the transferee, the evidence need not demonstrate any fraudulent intent on the part of Stein to establish that the transaction in question was fraudulent as to Duenas. The trial court found that the 2011 loan transaction was "intended to hinder and delay" Duenas's ability to collect the debt owed to her by Leon, specifically finding that Leon was "not credible in denying" that "they were actively working together to hinder and delay" Duenas's ability to collect the debt owed to her by Leon.

---

. . . entered into the transaction in question with actual intent to hinder, delay, or defraud [Duenas]," we note that incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Lifshutz*, 199 S.W.3d at 17.

7

To the extent that Stein argues that the evidence was legally insufficient to support the trial court's finding that Leon engaged in the 2011 transaction with actual intent to hinder, delay, or defraud Duenas, we disagree.

The UFTA provides the following non-exclusive list of factors, or "badges of fraud," that courts may consider in determining whether the transfer was made with actual intent to hinder, delay, or defraud the creditor:

(1)    the transfer or obligation was to an insider;

(2)    the debtor retained possession or control of the property transferred after the transfer;

(3)    the transfer or obligation was concealed;

(4)    before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5)    the transfer was of substantially all the debtor's assets;

(6)    the debtor absconded;

(7)    the debtor removed or concealed assets;

(8)    the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9)    the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10)    the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11)    the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

8

*Id.* § 24.005(b). Evidence of a single badge of fraud does not conclusively demonstrate intent, but evidence of many "will always make out a strong case of fraud." *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 843 (Tex. App.—Dallas 2006, no pet.). "Intent is a fact question uniquely within the realm of the trier of fact because it so depends on the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). Thus, whether a transfer was made with intent to defraud creditors is "ordinarily a question for the jury or the court passing on the fact." *Quinn v. Dupree*, 303 S.W.2d 769, 774 (Tex. 1957).

As part of its finding that Leon engaged in the 2011 transaction with actual intent to hinder and delay Duenas, the court issued the following findings of fact concerning the badges of fraud:

    a. the transfer or obligation was to an insider . . . ;

    b. [Leon] retained possession or control of the property transferred after the transaction in question, notwithstanding the fact she made no payments on the loan or lease at issue;

    c. the $24,000 interest free loan made at the time of the sale of the property was concealed to further hinder and delay [Duenas's] ability to collect the full amount of the agreed judgment;

    d. before the transaction in question, the debtor had been sued by [Duenas] and such suit was imminently proceeding to trial, at which it was highly likely a judgment for [Duenas] would be entered;

9

e. the transaction in question involved a transfer of substantially all of [Leon's] assets;

f. After the sale of the property in July 2012, [Leon] absconded to Mexico and refused to provide information relevant to [Duenas's] suit against [Stein] as she agreed in the settlement agreement . . . between her and [Duenas], further hindering and delaying [Duenas's] ability to collect the full amount of the agreed judgment;

g. [Leon] concealed the fact that she obtained a $24,000 interest free loan from [Dennis], further hindering and delaying [Duenas's] ability to collect the full amount of the agreed judgment;

h. the value of the consideration received by [Leon] via the transaction in question was not reasonably equivalent to the value of the asset transferred;

i. [Leon] was insolvent or became insolvent shortly after the transaction in question;

j. the transaction in question occurred shortly before a substantial debt was incurred (i.e. the settlement/agreed judgment in the prior case) by [Leon], and during a period of time when [Leon] knew that she would soon be subjected to a substantial judgment to [Duenas] arising out of the prior suit;

k. [Leon] transferred the essential assets of her business to [Stein], who directed the proceeds of the loan to [Dennis] and/or [SteinReal];

l. [Leon] and [Dennis] (individually and on behalf of [SteinReal]) were not credible in denying their intent to hinder or delay [Duenas's] ability to collect the debt owed to her by [Leon]; and,

m. [Duenas] was credible in describing the closeness of the relationship between [Leon] and [Dennis], which the Court

10

finds was a close friendship rather than an arms-length business relationship.

With respect to its finding that the transfer was made to an insider, the court made numerous additional findings explaining that Leon and the Steins were "insiders" for the purposes of the statute. For example, the court found that Leon and Dennis "were close friends who had done business together for approximately ten years prior to the transaction in question." The court found that, at the time of the transaction, Leon and Dennis Stein were actively collaborating on a development project and thus "had a relationship akin to business partners." Furthermore, the court found that Leon had absconded to Mexico and refused to provide Duenas with information concerning this lawsuit against Kay Stein, which evidenced "the insider relationship between [Stein] and [Leon.]"

Stein mainly argues that the court could not have found that the transfer was made to an insider because she and her husband do not fall within one of the statutory definitions of "insider" provided by the UFTA.[2] But insider status is not

---

[2]    The UFTA states that, if the debtor is an individual, an "insider" includes:

    (i)    a relative of the debtor or of a general partner of the debtor;

    (ii)    a partnership in which the debtor is a general partner;

    (iii)    a general partner in a partnership described in Subparagraph (ii) of this paragraph; or

    (iv)    a corporation of which the debtor is a director, officer, or person in control

11

limited to the categories listed by the UFTA; the list is "provided 'for purposes of exemplification.'" *Hahn v. Love*, 321 S.W.3d 517, 525 n.8 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *J. Michael Putnam, M.D.P.A. Money Purchase Pension Plan v. Stephenson*, 805 S.W.2d 16, 20 (Tex. App.—Dallas 1991, no writ)).

"In general, an 'insider' is an entity whose close relationship with the debtor subjects any transactions made between the debtor and the insider to heavy scrutiny." *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 609 (Tex. App.—Houston [1st Dist.] 2002, no pet.). When determining insider status, courts have considered "(1) the closeness of the relationship between the transferee and the debtor, and (2) whether the transactions were at arm's length." *Id.*; *accord In re Holloway*, 955 F.2d 1008, 1010 (5th Cir. 1992)). Thus, a trial court's finding of insider status has been upheld when the transferee and the debtor "engaged in social activities" and "entered into several business deals" together, and the transferee knew of the debtor's financial difficulties. *See Putnam*, 805 S.W.2d at 18–19.

Stein does not contend that the evidence does not support a finding of insider status based on these considerations. Even so, the evidence in this case supported a finding that Leon and the Steins shared a close relationship, given their apparent

TEX. BUS. & COM. CODE § 24.002(7).

12

longstanding friendship, shared business endeavors, and Leon's substantial debts to SteinReal.

With respect to the trial court's remaining findings concerning the badges of fraud, Stein emphasizes alternate inferences to be drawn from the evidence or contends that the evidence was either controverted or inconclusive. For example, Stein argues that Leon's disappearance to Mexico did not conclusively establish that she had "absconded" without further evidence about her subjective state of mind. She further argues that no direct evidence established that the $100,000 lien was of greater value than substantially all of Leon's assets. When considering the legal sufficiency of the evidence to support the challenged findings, however, we indulge the reasonable inferences to support the findings and disregard contrary evidence unless a reasonable factfinder could not. *See City of Keller*, 168 S.W.3d at 822, 827. We overrule Stein's arguments that ask us to do otherwise.

Notwithstanding Stein's various arguments, the evidence in this case, when viewed in the light most favorable to the judgment, supports several of the court's findings concerning the badges of fraud. Leon testified that her liabilities were greater than her assets at the time of the transfer, supporting the court's finding that she was insolvent. *See* TEX. BUS. & COM. CODE § 24.005(b)(9). She also testified that the property on which she provided a lien was her only significant asset. *See id.* §24.005(b)(5). As discussed above, the evidence supported the trial court's

13

finding that Leon and the Steins were insiders. *See id.* § 24.005(b)(1). It was undisputed at trial that Leon had disappeared to Mexico and stopped communication with Duenas after the transfer, as this lawsuit developed. *See id.* § 24.005(b)(6). Furthermore, the date of the transfer in question, April 2011, was three months before Leon went to mediation with Duenas regarding the unpaid debts. The established timeline in this case supports the court's finding that the transaction occurred shortly before a substantial debt—i.e., the settlement and agreed judgment resulting from the mediation–was incurred. *See id.* § 24.005(b)(10). Given this record, the evidence is legally sufficient to support the trial court's finding that Leon entered into the 2011 transaction with actual intent to hinder or delay Duenas's claim against Leon. *See City of Keller*, 168 S.W.3d at 810.

Because the trial court's judgment is fully supported by the evidence and its findings with respect to section 24.005(a)(1), we need not consider Stein's arguments about the court's other findings supporting alternate legal theories supporting the judgment. *See* TEX. R. APP. P. 47.1.

We overrule Stein's sole issue.

## Conclusion

We affirm the trial court's judgment.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.